Ronald McKEE et al., Libelants-Appellees,

v.

**BRUNSWICK CORPORATION and Flagship Boats, Inc., Respondents-Appellants.**

Ronald McKEE et al., Libelants-Appellees,

v.

**MALLORY ELECTRIC CORPORATION, Respondent-Appellant.**

Ronald McKEE et al., Libelants-Appellees,

v.

**Alex SEMENCHUK and Kenneth Bond, etc., Respondents-Appellants.**

**Ronald McKEE et al., Libelants-Appellants,**

v.

**BRUNSWICK CORPORATION et al., Respondents-Appellees.**

Nos. 14849, 14852.

United States Court of Appeals Seventh Circuit.

Dec. 14, 1965.

Bernard Harrold, John W. Kearns, Jr.,
Chicago, Ill., Kirkland, Ellis, Hodson,
Chaffetz & Masters, Chicago, Ill., of

counsel, for respondents-appellants, Brunswick Corporation and Flagship Boats, Inc.

L. H. Vogel, Albert F. Manion, David F. Holland, Chicago, Ill., for respondent-appellant, Mallory Electric Corporation.

Harold W. Huff, Herbert C. Loth, Jr., Robert J. Wysong, Chicago, Ill., Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel, for respondents-appellants.

C. Roy Peterson, Edward B. Hayes, Edward J. Griffin, John L. Flynn, Edward B. Hayes, Lord, Bissell & Brook, William A. Domm, Defrees, Fiske, O'Brien, Thomson & Simmons, Flynn, Galvin, Owens & Flynn, Chicago, Ill., for appellees.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

These libels to recover for personal injuries and property damage under the admiralty jurisdiction of the district court[1] were consolidated and tried, on severed issues, by the district court without a jury, and resulted in judgments in favor of libelants. Respondents have appealed and libelants have cross-appealed. We decide the issues on appeal and cross-appeal in favor of libelants.

Libelants were injured on June 4, 1960, when an explosion occurred in the engine of the boat "Penelope," owned by libelant-Poehlmann, in the Monroe Street Harbor. They sued Semenchuk and Bond, d/b/a Bond Boat Sales (Bond), from whom Poehlmann bought the "Penelope" on March 19, 1960; Flagship Boats, Inc., and Brunswick Corporation, respondents-successors of Owens Yacht Company, designer and manufacturer of the "Penelope";[2] and Mallory Electric Corporation, constructor and supplier to Owens of ignition coils used in boats like "Penelope."

Judgments based on findings of negligence were entered against Brunswick, Flagship and Mallory in favor of all libelants; and against Bond on a finding of breach of warranty in favor of Poehlmann, but for Bond and against all libelants on the question of negligence. No issue is raised as to the amounts of the judgments.

The "Penelope" was delivered to Poehlmann on May 6, 1960, after being filled by Bond with forty-three gallons of gasoline. No fuel was added between this date and June 4, and nothing unusual observed in its few hours of operation.[3] On June 4, Poehlmann and his guests, the other libelants, boarded the "Penelope," left the Monroe Street Harbor, and went north in Lake Michigan to Chicago Avenue where the engine was stopped for a short time. They proceeded north a way, then returned to the Harbor where the engine was again stopped. Each time the engine was started, Poehlmann removed the "hatch cover" and ran the "bilge blower" for approximately five minutes, then replaced the cover. Finally, en route to discharge the guests, after the "Penelope" had gone at slow speed for ten or twelve minutes, the explosion and fire occurred.

The district court found no contributory negligence on the part of any libelants; that the proximate cause of the explosion was the negligent construction and furnishing by Mallory of a defective coil and its negligent installation by Owens without a protective fuse and without properly testing it; and that the "Penelope" in the condition delivered was imminently and inherently dangerous while it was being used for the purpose expressed by Poehlmann to Bond. The court concluded that respondents Mallory and Flagship Boats, Inc. negligently violated their duty of ordinary care to libelants; that the negligence proximately

---

[1.] The accident occurred within the navigable waters of Lake Michigan.

[2.] Flagship Boats, Inc., formerly Owens Yacht Co., Inc., sold its assets to Brunswick Corporation in exchange for the latter's assumption of certain liabilities.

[3.] Evidence showed the boat was operated less than five hours by Poehlmann before the explosion and fire.

caused libelants' injuries; that Brunswick, by virtue of its contract with Flagship, was also liable; and that while Bond had no duty to inspect and test, and was accordingly not negligent, it was liable to Poehlmann for breach of warranty.

### Mallory Electric Corporation

■ We see no merit in Mallory's contention that the court's findings and conclusions as to the cause of the explosion and the bases of its *in personam* jurisdiction are deficient, under Rule 52(a) of the Federal Rules of Civil Procedure. The purpose of Rule 52(a) is to aid the reviewing court in its decision and to enable the appellant to determine whether there is a question worthy of appeal. George v. United States, 295 F.2d 310 (7th Cir. 1961).

■ The ultimate factual findings of the court are plainly based on the court's recital under "Findings of Fact" of the testimony of libelants' expert supported by photographic proof. Mallory claims no difficulty in determining that it has meritorious points on appeal and we have experienced no difficulty in learning from the findings and non-burdensome references to the "Appendix" the bases of the court's conclusions as to liability and jurisdiction. We consider the findings sufficiently "special" for compliance with Rule 52(a).

Mallory is a Michigan corporation having its principal place of business at Detroit. It is not authorized to do business in Illinois. It contends it was not amenable to service, process or suit within the Northern District of Illinois.

■ Service was first made on George Carter, Mallory's manufacturer's representative in northern Illinois. Service was also made on Mallory's president, in Detroit. Mallory's motions to quash both services, and to dismiss for lack of venue, were denied. Libelants filed two affidavits in opposition to Mallory's motions. One affidavit stated Mallory's name was listed, along with local sales representatives for its parts, in Chicago telephone directories. The second affidavit contained selective testimony from a deposition taken of Mr. Carter, wherein he testified concerning his solicitation activities on Mallory's behalf in northern Illinois. An exhibit showed Mallory sales of over $63,000 in this area for December, 1960–November, 1961. In addition, Mallory's marketing program includes the sale of its coil, as happened here, to assemblers of the final product, with full knowledge and contemplation that sales of the completed product, of which Mallory's coil is an essential component, will be solicited and made in many areas beyond Detroit.

■ We think it was shown that Mallory was doing business within Illinois, see Koepp v. Peters, 193 F.Supp. 296 (E.D.Wis.1961), and that the minimum contacts rule of International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945), has been satisfied in this admiralty case. Extraterritorial federal process pursuant to a state statute authorizing extraterritorial personal service is permissible in admiralty, see Riinc, Inc. v. Peddie, 195 F.Supp. 124, 126 (E.D.Ill.1961); Koepp v. Peters, supra; Frase v. Columbia Transportation Co., 158 F.Supp. 858 (N.D.Ill.1957), and the Illinois "longarm" statute[4] provided the justification

---

4. 2 ILL.REV.STAT. ch. 110, §§ 16–17 (1961), provide in part:

§ 16. Personal service outside State. (1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; * * *

\* \* \* \* \*

§ 17. Act submitting to jurisdiction—Process (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action

for the service on Mallory's president. We find no error in the denial of Mallory's motions.

We are not persuaded by Mallory's argument that an abuse of expert testimony resulted from libelants' alleged use of mere opinions of experts as a substitute for proof of the cause of the explosion. Libelants' experts Blair and Babcock testified. As a basis for their opinions there was testimony of the location of the coil at the top forward part of the engine and of the carburetor near the center top, the fire in the front of the engine compartment, damage by fire about the wiring and coil, less damage at the rear of the engine and at the bottom of the engine compartment, the heavy burning of the tops—but not bottoms—of various hoses, and the charring of the firewall at the forward end of the engine compartment near the coil.

There is no evidence of contributory negligence of libelants. There is positive evidence that there was no gasoline leak or "unusual smell," and that the bilge was dry and bilge blowers operating just before the explosion, no libelant was then smoking and nothing had been dropped into the hatch, and there was then nothing "significant" about the noise of the engine. These are facts to which presumably the court's attention was called by the experts and which could be verified so as to give the necessary value to the expert testimony. Jones v. Jones, 406 Ill. 448, 450, 94 N.E.2d 314 (1950). The expert opinion was that a defect in the coil caused the explosion.

Mallory argues that libelants failed to prove the coil was defective or responsible for the explosion. The argument is not valid. Expert Blair saw the "Penelope" twice after the explosion.

His observation confirmed what exhibits showed with respect to the worst fire damage at the location of the coil and resistor and the wire from them to the ignition board; copper globules caused by excess heat were on the No. 14 wire which was softened all the way to the control board, but the globules were on the wire only near the coil and resistor; and that other wires in other areas of the engine were not burned and had no copper globules on surfaces.

On the basis of his testimony, expert Blair gave an opinion that the explosion was caused by an electrical "shorting" in the wiring of the ignition circuit leading from the ignition switch to the resistor-coil unit; that the short resulted from heat of excess current in the wire being supplied to the coil, and the short resulted in melting the insulation off the wire which contacted a wire from the battery close to the coil, and the explosion and fire followed. He stated that only at the places where the wires were welded were there copper globules evidencing the electrical overheating; that if the coil or resistor, or both, were not defective the current flow would not be "unrestricted," and that the defect in the coil-resistor assembly permitted the excess current flow. He gave his opinion that there was no other possibility to explain the overheating of the wiring than the defective coil and resistor. He demonstrated in court the excessive current in an insulated wire and its effect in turning the wire red hot, vaporizing the insulation, and the generation of the copper globules which he observed on the "Penelope." He stated that the photographic exhibits were taken to record his observations when he examined the "Penelope." The wire behind the ignition board was softened, but the board not burned, thus

arising from the doing of any of such acts:

    (a) The transaction of any business within this State;

    (b) The commission of a tortious act within this State; * * *

*   *   *   *   *

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

*   *   *   *   *

negating the idea of an extensive fire doing the damage.

Blair's testimony was corroborated to some extent by that of expert Babcock. In so far as Babcock's testimony was weak or inconsistent, his testimony, as well as Blair's and the defense experts', was credited or discredited as the district court observed the witness. Blair was subjected to exhaustive cross-examination, but the result was not to preclude the district court from inferring that the explanation for the cause of the explosion offered by Blair was probably the truth. Nor was the court precluded from deciding against the explanation that the coil was made defective by the fire, rather than its defect causing the fire, where there was testimony of no fumes or fire in the hatch observed prior to the explosion and of wire softened by excess heat though behind fireboard not harmed by the fire.

We think there is ample testimony to show that the coil on the "Penelope" was Mallory's product. It sold Owens a variety of coils, including the type found on the "Penelope." There is no room for any inference that the coil came from any other source. And we cannot say the court erred in drawing inferences unfavorable to Mallory from its failure to produce testimony available to it from Mallory employees with respect to their actual testing of the coil as opposed to the customary procedure of testing.

The findings of the court as to Mallory's negligence and the proximate cause of the explosion do not leave us with a "firm conviction that a mistake has been committed," and are not clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). And the conclusion of its liability is not erroneous.

Mallory is not helped by Hoskyn & Co. v. Silver Line, 143 F.2d 462 (2d Cir. 1944), where there was only expert testimony both that a "possible" cause was connected with the shipowners' negligence and that a "possible" cause was unconnected with that misconduct, the court of appeals affirming the district court's finding that the cause of the fire was not proved. There is a substantial basis for the finding, before us, that the explosion *probably* occurred only as Blair's opinion, based on observation and undisputed physical evidence, stated.

■ Mallory's duty was to test, or properly test, its product, foreseeing that if it produced and sold a defective coil assembly it was likely that an explosion might occur causing injury to the owner and passengers of a vessel in which the product was installed. Mallory's reliance on Franklin v. United States, 342 F.2d 581, 584 (7th Cir. 1965), avails nothing, as that decision does not immunize Mallory from liability once its duty, and the foreseeability of resulting injury if it breaches this duty, have been established, as here. There was no error in concluding that Mallory was liable to libelants for breach of that duty with respect to its product.

### Brunswick Corporation

■ Brunswick does not "quarrel" with the finding underlying the district court's conclusion as to Mallory's liability. It argues that there was not sufficient evidence that it installed the defective coil that caused the explosion, and that someone must have switched coils after the "Penelope" left its factory. The district court found that Owens-Flagship-Brunswick's negligent installation of the defective coil in the "Penelope" and her sale "without testing or with inadequate testing" of the coil, and with no fuses in the ignition system, despite an admission of a defect in designing of part of the vessel at the time, and explosions and fires in others of its vessels, proximately caused the accident. There is ample basis for the district court's finding that the defective coil was installed by Brunswick's predecessors, and a finding that someone switched the coil installed for the defective coil is not compelled by the record. There is also a substantial basis for a finding that Brunswick's predecessors had a duty, in view of their experiences with other vessels, to foresee that if they did not test or adequately test the

coil installed, the coil might be defective, as it turned out to be, and to foresee the likelihood of an accident like the one that occurred. The court was justified in inferring that, because evidence available to Brunswick was not presented by it concerning the specific testing of the "Penelope" and its coil and what its inspection of the "Penelope" after the accident disclosed, the evidence would have been unfavorable to Brunswick. The reason advanced by Brunswick for omitting a protective fuse in the ignition circuit, although it installed fuses in accessory circuits of the vessel, is not convincing, i. e., the risk of engine stopping and resultant danger to passengers. This is a less dangerous risk than that of explosion and fire.

We think there is no clear error in the findings and that the conclusions are not erroneous.

### Bond

■ The district court found that Poehlmann expressed to Bond that the vessel being purchased was to be used by him for pleasure purposes upon Chicago area waters and relied on Bond's skill and judgment that the "Penelope" was reasonably fit for this purpose. The conclusion followed, because of the later event, that Bond breached its implied warranty of fitness by this Illinois sale.[5] We see no error in the finding or conclusion. The evidence justifies the inference of fact and does not compel the inference that Poehlmann bought the "Penelope" under its trade name and designated the boat; or that he did not rely upon Bond in selecting the boat. The opposite is undisputed. Nor does the evidence compel any inference that the coil was not defective, nor in the boat, when the sale occurred.

### Cross-Appeal of Libelants

The court refused, after trial, to permit libelants-passengers to amend their libel to conform to the evidence and to assert the claim that the warranty extended to others than Poehlmann. They relied on Suvada v. White Motor Co., 51 Ill.App.2d 318, 201 N.E.2d 313 (1964), which was subsequently affirmed on the theory of strict liability for defective products, Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965).[6] This ruling, plus the court's conclusion that Bond owed no duty of inspection and testing of the coil to them, form the basis of the cross-appeal. We need not reach the question of validity of that conclusion.

■ We think the court erred at the time of its ruling in refusing to permit amendment because the warranty extended to the movants. We now conclude, in view of Suvada v. White Motor Co., that Bond is liable as a matter of law on this record to the movants, and direct that the court allow movants to conform their pleading to embrace the theory of that decision, which we approve.

The Illinois Appellate Court in Suvada upheld certain counts of a complaint which imposed strict liability on the manufacturer and vendor of an allegedly defective product, based on an implied warranty theory. The Illinois Supreme Court, subsequent to the district court's ruling here under review, and following the modern trend of cases, stated that product liability for a defective product sounds in tort, that lack of privity is no defense, and that negligence is no longer necessary to liability. 210 N.E.2d 182, 185, 188. The Illinois Supreme Court decision noted that lack of privity is also not a defense to a seller, to whom this liability in tort also extends, citing Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847 (1950). Without this defense, we think that the seller also is liable to all injured by the defective product. No cases have been cited which de-

This implied warranty of fitness for a particular purpose arose under 2 Ill.Rev. Stat. ch. 121½, § 15(1) (1961), which was repealed as of July 2, 1962 and replaced by the Commercial Code, see 1 Ill.Rev.Stat. ch. 26, § 2–315 (1965).

See generally, 54 Ill.B.J. 362 (1965); Postilion, Products Liability: The Negligence Theory, 53 Ill.B.J. 572, and Postilion, Products Liability: The Breach of Warranty Theory, 53 Ill.B.J. 704 (1965).

cided the limit of this liability against the seller. We think, however, that the passengers on a pleasure boat are due the same protection as its owner, if they are injured by the defective vessel. See generally, Pitts v. Basile, 55 Ill.App.2d 37, 204 N.E.2d 43 (1965); Lill v. Murphy Door Bed Co., 290 Ill.App. 328, 342, 8 N.E.2d 714 (1937); Colbert v. Holland Furnace Co., 333 Ill. 78, 81–82, 164 N.E. 162, 60 A.L.R. 353 (1928).

Libelants, relying on Suvada, 210 N.E. 2d at 188, would have the burden of proving:

1) that their injury resulted from a condition of the product;

2) that the condition was an unreasonably dangerous one; and

3) that the condition existed at the time the "Penelope" left the control of Bond.

Bond claims that none of these elements was proved. There is no merit to the claim. We have affirmed the district court's findings and conclusions that libelants' injuries were caused by a defect in the vessel, which was unreasonably dangerous, and which necessarily, on this evidence, existed prior to the time Bond obtained control and "at the time it left" Bond's control.

For the reasons given, the judgments in favor of libelants and against Mallory, Brunswick, and Flagship are affirmed. The judgment in favor of Poehlmann and against Bond is affirmed.[7] The judgment in favor of Bond and against the other libelants is reversed and the cause remanded with directions to enter judgment against Bond and in favor of libelants, other than Poehlmann, in the same amount as the judgments in their favor against Mallory, Brunswick, and Flagship.[8]

Affirmed in part and reversed in part.

---

7. This judgment was on implied warranty theory, but we see no necessity of reversing to substitute product liability theory since there would be no need of change in proof for the latter.

8. The question of Bond's product liability under the Suvada rule was argued in its briefs here.