**H & F BARGE COMPANY, INC.,**
Plaintiff,

v.

**GARBER BROTHERS, INC., and Charles L. Garber, Individually, Defendants.**

Civ. A. No. 73–3222.

United States District Court,
E. D. Louisiana.

Nov. 13, 1974.

Charles M. Steen, New Orleans, La., for plaintiff.

Joaquin Campoy, William S. Stone, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

The motions in this case raise the issue whether the plaintiff resorted to the

wrong court when it filed a personal action based on admiralty jurisdiction in the Eastern District of Louisiana against a Louisiana corporation domiciled and served in the Western District. While the corporate defendant, Garber Brothers, has its domicile in the Western District of Louisiana, it in fact does business in the Eastern District of Louisiana as well as in the Western District. The defendants concede that the court has subject matter jurisdiction, but argue that it lacks jurisdiction of the defendant's person and that the venue is improper.

Before dealing specifically with these arguments, let us review briefly the fundamental but seldom articulated principles of federal jurisdiction that govern this case.

## I. PERSONAL JURISDICTION OF THE DEFENDANT

The Constitution limits the subject matter of suits that may be entertained by federal courts; hence federal courts differ from the courts of general jurisdiction found in all states. Inquiry into subject matter jurisdiction is necessarily a threshold question in the federal courts. The other prerequisites to maintaining an action in federal court, however, are the same requirements that must be established in state courts. The court must have jurisdiction over the person of the defendant, or, if the action is in rem, over the property in suit, and it must be the court of proper venue. D. Currie, Federal Courts 657 (1968).

The principles that determine whether or not a state may exercise in personam jurisdiction over a corporation are thoroughly developed, if not always clear in application. Courts establish their jurisdiction over the defendant by service of process, the arm of the sovereign reaching out and asserting its authority over the defendant's person. See F. James, Jr., Civil Procedure § 12.1 at 611–20 (1965). The limitations on effective service of process by a state court were at one time seen as limitations of power, the inevitable consequence of the sovereign's territorial limitations. Pennoyer v. Neff, 1877, 95 U. S. 714, 24 L.Ed. 565. As the cornerstone of jurisdictional theory, these territorial limitations still play an important role. See Hanson v. Denckla, 1958, 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L. Ed.2d 1283. Increasingly, however, the state's jurisdictional power over the person of the defendant has been determined by the relationship between the parties and the state, and by the informational purpose service of process fulfills—that is, the notice it gives the defendant that an action has been commenced and he must appear to defend it. See F. James, Jr., Civil Procedure § 12.10 at 644–49 (1965); 2 Moore's Federal Practice ¶ 4.25 at 1145–73. A state may exercise jurisdiction over anyone whose activities are so related to its citizens or its territory that suit there would not offend traditional notions of substantial justice and fair play. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 1957, 355 U. S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

Though federal decisions often deal with these matters, the considerations that determine federal in personam jurisdiction are essentially different,[1] at least in non-diversity matters.[2] As in

---

1. Because the Federal Rules of Civil Procedure permit a plaintiff to use any method of service permitted by state law, most federal decisions dealing with in personam jurisdiction turn on the issues addressed in *McGee* and *International Shoe*. See Rule 4(e). Because most of the state "long-arm" statutes are designed to extend a state's power to its fullest extent, the constitutional decisions help define the scope of the statute and thus the scope of federal process that rests on Rule 4(e).

2. Justice Black argued that in diversity cases state lines may be constitutionally controlling:

   Whatever power Congress might have in these other areas to extend a District Court's power to serve process across state lines, such power does not, I think,

state courts, jurisdiction over a defendant is generally established by service of process. The principles governing amenability to service of process in federal court, however, are much more difficult to divine and seldom discussed. See, generally, Hart & Wechsler, The Federal Courts and the Federal System 1106–13 (2d Ed. 1973); Green, Federal Jurisdiction in Personam of Corporations and Due Process, 14 Vand.L.Rev. 967 (1961).

There is some authority for the proposition that the Constitution does not limit the geographic scope of process issuing from the federal district courts in a matter in which they have subject matter jurisdiction, no matter what the relationship of the parties to the locale in which the court sits. See Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119; National Mutual Insurance Co. v. Tidewater Transfer Co., Inc., 1949, 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556. Congress has provided no guidance in this area, and several courts have turned to *International Shoe* and *McGee* by analogy to develop limitations on service of process based on "general principles of fairness." See, e. g., Lone Star Package Car Co. v. Baltimore & O. R. R., 5 Cir. 1954, 212 F.2d 147; Fraley v. Chesapeake & O. Ry., 3 Cir. 1968, 397 F.2d 1; Hart & Wechsler, The Federal Courts and The Federal System, at 1118–25 (2d Ed. 1973).

■■ However interesting and challenging a task it might be to do so, this case does not require that we define the furthest limits of a federal district court's in personam jurisdiction because the actual service of process here does not test them. Defendant Garber Bros. does business in the Eastern District of Louisiana; whatever the general rule of amenability to suit in federal courts may be, it certainly permits a federal district court to assert in personam jurisdiction over a corporation that does business within its boundaries. Scott v. Middle East Airlines Co., S.A., S.D.N.Y. 1965, 240 F.Supp. 1. If the statutes of the United States permit the kind of service made here—a matter to be discussed in some detail—then Garber Bros. was properly before the court. The sovereign in federal admiralty matters is, after all, the United States of America. The mere fact that a defendant received notice of suit in one administrative territory rather than another cannot, so long as the service was statutorily proper, vitiate the sovereign's in personam jurisdiction over him. See Hart & Wechsler, The Federal Courts and the Federal System, 1106–07 (2d Ed. 1973).

■ Defendant Garber Bros. argues that admiralty principles are different, both with respect to amenability to suit and service of process. Counsel suggests that in admiralty the federal courts may require a defendant to respond to their in personam process only if they in fact serve him within their territorial limits. Although admiralty practice has both a separate history and a different pattern of evolution, it is clear that the same fundamental principles of in personam jurisdiction govern federal district courts whether they apply admiralty law or other laws of the United States.[3] Well established admi-

---

provide sound argument to justify reliance upon *diversity jurisdiction to destroy a man's constitutional right to have his civil lawsuit tried in his own State.* National Equip. Rental, Ltd. v. Szukhen, 375 U.S. 311, 331, 84 S.Ct. 411, 423, 11 L.Ed.2d 354 (1964) (dissenting opinion).

In diversity matters the weight of authority suggests that state law with respect to amenability to service governs the federal

courts, at least in the absence of a federal statute to the contrary. See Arrowsmith v. United Press International, 2 Cir. 1963, 320 F.2d 219; 4 Wright & Miller, Federal Practice & Procedure § 1075, n. 50 at 309–10.

3. A line of cases that developed under Rule B, Supplemental Rules for Certain Admiralty and Maritime Claims, seem to rely for other purposes on the notion that in person-

ralty doctrine permitted the exercise of in personam jurisdiction in this case and the statutes of the United States authorized service of process on Garber Bros.

Neither the First Judiciary Act,[4] nor subsequent statutes or rules dealt expressly with admiralty proceedings. Therefore the federal courts, sitting in admiralty, evolved a set of principles pertaining to personal jurisdiction. These were responsive to the needs of marine commerce, and the transitory nature of vessels. Thus, in 1890 the Supreme Court said,

> By the ancient and settled practice of courts of admiralty, a libel *in personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libelee, or an attachment made of any personal property or credits of his; and this practice has been recognized and upheld by the rules and decisions of this court. In re Louisville Underwriters, 1890, 134 U.S. 488, 490, 10 S.Ct. 587, 588, 33 L.Ed. 991.

The Court continued,

> Courts of admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and on the other hand, often have property or credits in other places. In all nations, as observed by an early writer, such courts "have been directed to proceed at such times, and in such manner, as might best consist with the opportunities of trade, and least hinder or detain men from their employments." Zouch, Adm. 141. In the same spirit, this court has more than once said: "Courts of admiralty have been found necessary in all commercial countries, for the safety and convenience of com-

---

am jurisdiction in admiralty is related to the district court's geographical boundaries. Rule B permits attachment of a defendant's property in in personam admiralty matters only if the defendant cannot be "found within the district." In Seawind Compania, S.A. v. Crescent Line, Inc., 2 Cir. 1963, 320 F.2d 580, 582, the Second Circuit noted:

> The Admiralty Rules do not define the expression "found within the district." In the cases construing Rule 2 [forerunner of Rule B], however, the requirement is said to present "a two-pronged inquiry: first, whether [the respondent] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process."

To outline the inquiry necessary under Rule B, the Second Circuit relied on and quoted from Judge Weinfeld's opinion in United States v. Cia. Naviera Continental S.A., S. D.N.Y.1959, 178 F.Supp. 561, 563. But that case did not rest on any separate body of law placing territorial limits on admiralty in personam jurisdiction. Rather, Judge Weinfeld drew from the familiar cases dealing with state in personam jurisdiction of corporations in an attempt to give the phrase "found within the district" some meaning, as the cases he cited demonstrate. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Szabo v. Smedvig Tankredi A.S., S.D.N.

Y.1951, 95 F.Supp. 519; Federazione Italiana Dei Consorzi Agrari v. Mandask Compania D.V., S.D.N.Y.1957, 158 F.Supp. 107.

Professor Moore deals at length with Rule B, arguing that the mere fact that a District Court may have in personam jurisdiction of a defendant corporation does not mean that the defendant can be "found within the district" so that its property may not be attached. 7A Moore's Federal Practice ¶ B.06 at B–251—B–274. His discussion lends further support to the conclusions of this opinion.

4. The First Judiciary Act prohibited a civil suit in any district other than the one "whereof [the defendant] is an inhabitant, or in which he shall be found at the time of serving the writ." Act of Sept. 24, 1789, c. 20, § 11, 1 Stat. 73, 79. This statute commingled concepts of personal jurisdiction and venue arising from service of process; but, since the statute forbade service of process outside the district in which the action had been brought, it effectively limited the personal jurisdiction of a federal district court to cases where service was made in the geographical territory in which it sat and those where the defendant voluntarily appeared. See Robertson v. Railroad Labor Bd., 1925, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119.

merce, and the speedy decision of controversies, where delay would often be ruin." The Genesee Chief, 53 U.S. 443, 12 How. 443, 454, 13 L.Ed. 1058; Insurance Co. v. Dunham, 78 U.S. 1, 11 Wall. 1, 24, 20 L.Ed. 90. To compel suitors in admiralty, when the ship is abroad, and cannot be reached by a libel *in rem,* to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience, and expense, but would in many cases amount to a denial of justice. Id. 134 U.S. at 493, 10 S.Ct. at 589.

■ Hence, a court sitting in admiralty has personal jurisdiction over any defendant sued in personam whom the court can reach with process. There appears to be no restrictive condition that the process must be served within the geographic territory over which the court is constituted.

The general proposition that an admiralty proceeding in personam may properly be brought in any district whose process may reach the defendant occasioned no difficulty. But because of the separate admiralty procedure prior to 1966 and the restrictions on service of process *in admiralty matters,* the rule had limitative overtones, and indeed prevented a corporation from being sued unless it could in fact be served *within* the district. The restriction, however, arose not out of limitations on the personal jurisdiction of the federal district court but out of the impossibility under then applicable rules of serving the defendant outside the district.[5]

In 1966, civil and admiralty practice were united. Rule 4 of the civil rules has since its adoption in 1938 permitted process to be served throughout the state where that district is located. Since 1966, Rule 4 has applied not only to actions historically considered civil but to admiralty actions in personam, now both denominated and in fact considered civil.

Rule 9(h) requires a claim cognizable only in admiralty to be treated as an admiralty claim "for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules," but not for all purposes. The Supplemental Rules themselves are restricted to admiralty and maritime claims "with respect to the . . . *remedies*" available by "maritime attachment and garnishment; actions in rem; possessory, petitory and partition actions; and actions for exoneration from or limitation of liability." (Emphasis supplied). Even as to proceedings seeking these remedies, the "general Rules of Civil Procedure . . . are also applicable . . . except to the extent they are inconsistent with these Supplemental Rules." Rule A, Supplemental Rules for *Certain* Admiralty and Maritime Claims. (Emphasis supplied).

■ Hence the full scope of Rule 4 applies to admiralty proceedings in personam and extends the personal jurisdiction of the court to any defendant properly served under that rule. This has been the conclusion of those courts that have considered this matter on the few occasions when the issue has been presented. See Monsieur Henri Wines Ltd. v. S. S. Covadonga, D.N.J.1963, 222 F.Supp. 139, relating to in personam third party proceedings in an admiralty matter; see also S. S. Bethflor v. Thom-

---

5. The defendants seize upon some dicta in Internatio Rotterdam, Inc. v. Thomsen, 4 Cir. 1955, 218 F.2d 514. That case, however, dealt with the propriety of transferring a matter to the Southern District of New York before in rem seizure had been effected in either district. Not only was the point the defendants urge not before the Fourth Circuit, but the sentence defendants rely on appears in a context very different from the present one. See 1 Moore's Federal Practice ¶ 0.144 [13.–1]; and fn. 3, *supra.*

as, 5 Cir. 1966, 364 F.2d 634, where the primary issue related to venue, but service of process was not challenged though made by the marshal in a different division of the district than the one in which suit was brought.

Similarly, under Rule 4(e), the courts have applied to admiralty matters the long-arm provisions of the states in which they sit. See S. S. Philipine Jose Abad Santos v. Bannister, 5 Cir. 1964, 335 F.2d 595 (decided before the 1966 amendments); McKee v. Brunswick Corp., 7 Cir. 1965, 354 F.2d 577. Use of long-arm process, of course, extends the in personam jurisdiction of the federal courts much further than the provisions of Rule 4(f).

The commentators have not been in doubt on the issue. "[T]he provisions of Rule 4(e) are perforce applicable to actions that are identified as admiralty and maritime under Rule 9(h). . . ." J. Lucas, Cases on Admiralty 296 (1969). See also 2 Moore's Federal Practice ¶ 4.42 [4]; Wright and Miller, Federal Practice and Procedure § 3243. "The rules can and did extend jurisdiction over the person, primarily by extending the territorial limits of effective service." 12 Wright and Miller, Federal Practice & Procedure § 3141, at p. 212. See also 7 Moore's Federal Practice ¶ 82.02[i]. Thus the view from "the juridical quarter deck," Penrod Drilling Company v. Johnson, 5 Cir. 1967, 414 F.2d 1217, reaches as far as Rule 4.

■ Nor is this a result prohibited by the provision in Rule 82 that the Civil Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts." The term "jurisdiction" as used in Rule 82 refers only to the subject matter jurisdiction of the courts, not the method of exercising personal jurisdiction through the service of process. Mississippi Publishing Corp. v. Murphree, 1946, 326 U. S. 438, 66 S.Ct. 242, 90 L.Ed. 185; Ransom v. Brennan, 5 Cir. 1971, 437 F.2d 513 (a diversity case). See also 7 Moore's Federal Practice ¶ 82.02[1], and cases cited therein.

■ The process of the United States District Court for the Eastern District of Louisiana thus runs, in admiralty in personam matters, to the Western District of this state. Garber Bros. was properly served in the Western District, and this court had in personam jurisdiction over it.

## II. VENUE

■ The defendant's next attack is on venue. Unlike its explicit provision for venue with regard to other civil matters, the Judicial Code contains nothing with respect to venue of suits in admiralty. Venue of the matters dealt with in the Supplemental Rules is covered, either expressly or impliedly, by those rules. See Rule C(2); Rule E(3)(a); Rule F(9). But it is clear that the venue of an in personam action in admiralty lies wherever the court has jurisdiction of the parties. J. Lucas, Cases on Admiralty 296 (1969). The "general venue provision with respect to actions in admiralty is thus co-extensive with personal jurisdiction." J. Lucas, Cases on Admiralty 297 (1969).[6]

■ Even if venue was not properly laid here, however, the objection was raised only after a default judgment had been entered and the time for appeal had expired. The right to have an action brought at the venue fixed by statute is a privilege personal to the defendant, and its waiver may be accomplished "either by an affirmative act significant of it or by failure timely to assert the defect in venue. Such failure may result from making a general answer upon the merits without asserting

---

6. Section 1391 of the Judicial Code, laying venue against a corporation in any district where it does business, is inapplicable because Rule 82 states that an admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action "For the purposes of Title 28, USC § 1391–93."

the impropriety in venue." Heiss v. Neilsen, D.C.Neb.1955, 132 F.Supp. 541. The venue statutes do not impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue. 28 U.S.C. § 1406(b).

Here, as in Commercial Insurance Company v. Stone Co., 1929, 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252, a civil action, the defendant waived its right to object to venue by permitting entry of a judgment by default. See also Podgorski v. U. S., 3 Cir. 1950, 183 F.2d 421; Allsman v. Rhodes, D.C.La. 1941, 37 F.Supp. 122.

Hence the Eastern District of Louisiana was the proper place in which to file suit and if it was not, the defendant has waived its right to object.

Therefore, the motions to set aside the default judgment for lack of jurisdiction and improper venue are denied.