COLONNA'S SHIPYARD,
INC., Plaintiff,

v.

The CITY OF KEY WEST,
FLORIDA, Defendant.

Civil Action No. 2:10cv63.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 27, 2010.

John D. Padgett, Esq., Robert W. McFarland, Esq., for Plaintiff.

Charles B. Lustig, Esq., Thomas B. Shuttleworth, II, Esq., for Defendant.

## Opinion and Order

MARK S. DAVIS, District Judge.

Plaintiff Colonna's Shipyard, Inc. ("Shipyard") has filed suit in admiralty requesting a monetary judgment against The City of Key West, Florida ("Key West"). This matter is before the Court on Key West's Motion to Dismiss, to Quash Process and Service of Process, or, in the Alternative, to Transfer Venue. (Docket No. 7) Oral argument has taken place, and the Court now **DENIES** Key West's Motion.

### I. Background

The Shipyard alleges that Key West has failed to honor a contractual promise to pay the Shipyard $1,095,848 for repair work performed on the vessel known as the U.S.A.F. Hoyt S. Vandenberg.[1] (Compl. ¶¶ 4, 12, 20, Docket No. 1.) On February 9, 2010, the Shipyard filed a Complaint in the Eastern District of Virginia alleging breach of contract, entitlement to quantum meruit recovery, constructive fraud, and breach of bailment. The Shipyard also sought the imposition of a constructive trust on Key West's taxes, project revenue, and other revenues. (Compl. ¶¶ 26–51.)

Key West thereafter filed a Motion to Dismiss, to Quash Process and Service, or, in the Alternative, to Transfer Venue. (Docket No. 7) In its Motion, Key West contended that the Eastern District of Virginia was not a proper venue for the ac-

tion. Additionally, Key West sought dismissal of Count V of the Complaint, in which the Shipyard sought a constructive trust on Key West's funds, for failure to state a claim upon which relief could be granted. At oral argument, Key West withdrew its objection to process and to service of process.

### II. Standard of Review

#### A. Rule 12(b)(3)

■ Key West seeks dismissal, or in the alternative, transfer, of the case pursuant to 28 U.S.C. § 1406(a),[2] which mandates the dismissal or transfer of an action brought in the wrong venue, and Rule 12(b)(3) of the Federal Rules of Civil Procedure. When such an objection to venue is raised, the plaintiff generally has the burden to show that venue is proper. *Bartholomew v. Virginia Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). However, in reviewing a Rule 12(b)(3) motion, the court must construe all factual inferences in the plaintiff's favor. *Id.*

#### B. Rule 12(b)(6)

■ Key West also seeks to dismiss Count V of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim should be granted if the complaint

---

1. This Court also presided over an earlier related action, *Colonnas v. U.S.A.F. GENERAL HOYT S. VANDENBERG*, 584 F.Supp.2d 862 (E.D.Va.2008), which can be referenced for additional information about the history of this dispute.

2. Key West has not sought transfer of the case pursuant to 28 U.S.C. § 1404(a), which gives

the district court discretionary authority to transfer a civil action to another district "[f]or the convenience of the parties." Therefore, the Court considers whether the Eastern District of Virginia is a *proper* venue for this action, and does not reach the question of whether another venue may be more convenient.

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Such a 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

### III. Discussion

#### A. Venue

28 U.S.C. § 1391, which describes the venue requirements for civil actions, does not apply to cases brought in admiralty, such as this matter. Fed.R.Civ.P. 82 ("[a]n admiralty or maritime claim under Rule 9(h) is not a civil action for purposes of 28 U.S.C. §§ 1391–1392"). Rather, plaintiffs in admiralty must comply with the admiralty common law venue rule established by *In re Louisville Underwriters*, a case decided by the United States Supreme Court in 1890. In its opinion, the Court held that:

[b]y the ancient and settled practice of courts of admiralty, a libel in *personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libelee, or an attachment made of any personal property or credits of his; and this practice has been recognized and upheld by the rules and decisions of this court.

134 U.S. 488, 490, 10 S.Ct. 587, 33 L.Ed. 991 (1890); *see Bailiff v. Storm Drilling Co.*, 356 F.Supp. 309, 310 (E.D.Tex.1972) (noting that *In re Louisville* is "generally accepted as the rule of venue").

■ The question raised by Key West is whether *In re Louisville* holds that admiralty venue is proper wherever a district court has personal jurisdiction, or only where the defendant may be served with process.[3] Key West, taking the latter position, claims that because it could not have been served with process within the territorial boundaries of the Eastern District of Virginia, this is not the proper venue for the action.[4]

While *In re Louisville* is widely cited as providing the definitive rule for determining *in personam* admiralty venue, the articulation of the rule varies. It is noteworthy that other circuits have stated that admiralty venue is proper wherever there is personal jurisdiction under the forum state's rules. *See Sunbelt Corp. v. Noble Denton & Assocs.*, 5 F.3d 28, 31 n. 5 (3d Cir.1993) ("An admiralty action may be brought against a corporation in any United States District Court which can obtain personal jurisdiction over that corpora-

---

**3.** Because it is not relevant to this action, the Court will for the sake of brevity omit the "or an attachment made of any personal property or credits of his" clause when repeating the provisions of the *In re Louisville* rule.

**4.** Under Fed.R.Civ.P. 4(j)(2), a municipal corporation such as Key West must be served by delivery of the complaint to the city's chief

executive officer or through other means prescribed by Florida law. It is undisputed that Florida's law does not allow service of process in Virginia under these circumstances, and it appears that Key West's chief executive officer was not located in the Eastern District of Virginia at the time of service.

tion.") (quoting *Ocean Science & Eng'g, Inc. v. Int'l Geomarine Corp.,* 312 F.Supp. 825, 829 (D.Del.1970))(internal quotation marks omitted); *In re McDonnell–Douglas,* 647 F.2d 515, 516 (5th Cir.1981) (noting that in admiralty practice, "venue and personal jurisdiction analyses merge")(quoting *Gipromer v. SS Tempo,* 487 F.Supp. 631, 633 (S.D.N.Y.1980)); *Bartlett–Collins Co. v. Surinam Navigation Co.,* 381 F.2d 546, 548 (10th Cir. 1967)("An admiralty action may be brought against a foreign corporation in any United States District Court which can obtain personal jurisdiction over that corporation."). This principle has also been followed by district courts within this circuit. *See Gov't of Egypt Procurement Office v. M/V Robert E. Lee,* 216 F.Supp.2d 468, 471 (D.Md.2002) ("[T]he court determines whether venue is proper in an admiralty action by assessing whether there is personal jurisdiction over the defendant.") (citing *In re Louisville Underwriters,* 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991); *Stambaugh v. Maritrans, Inc.,* No. 7:06cv149, 2007 WL 2002607, *6 (E.D.N.C. Jul. 5, 2007)(noting that venue is appropriate where personal jurisdiction exists)(citing *In re Louisville Underwriters,* 134 U.S. at 490, 10 S.Ct. 587, and *Sunbelt Corp.,* 5 F.3d at 31 n. 5).

Key West asserts that several courts have understood *In re Louisville's* rule to be that "venue is proper wherever the defendant may properly be served." *Potts v. Cameron Offshore Boats, Inc.,* 401 F.Supp.2d 733, 738 (S.D.Tex.2005); *see also Muller Boat Works, Inc. v. Unnamed 52' House Barge,* 464 F.Supp.2d 127, 138 (E.D.N.Y.2006)("venue lies in any district in which valid service of process could have been made on the defendant"); *Fluor Corp. v. S/S President Coolidge,* 52 F.R.D. 538, 539 (S.D.N.Y.1971)(venue appropriate "wherever the defendant can validly be served with process"). However, these opinions are not necessarily in conflict with the principle that admiralty venue is coextensive with personal jurisdiction. For example, the *Potts* court, notwithstanding its statement that "venue is proper wherever the defendant may properly be served," essentially found that admiralty venue was proper because personal jurisdiction existed. *Potts,* 401 F.Supp.2d at 738.[5]

A review of the historical context surrounding *In re Louisville* assists in reconciling the two arguably divergent approaches to admiralty venue advocated by the parties. Historically, personal jurisdiction and the availability of service of process have been closely intertwined.[6] When the *In re Louisville* opinion was issued in 1890, personal jurisdiction, and therefore service of process, was generally limited to the territorial boundaries of the district in which a court sat. *See Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). However, in the twentieth century, the courts' reach was extended to out-of-state defendants whose contacts with the forum were sufficient to satisfy constitutional due

---

**5.** In *Potts,* the plaintiff brought suit in the Southern District of Texas against a Louisiana corporation with no offices or employees in Texas. In its opinion, the court first determined that it had personal jurisdiction over the defendant under Texas's long arm-statute. *Potts,* 401 F.Supp.2d at 736–38. Having found that the defendant "was subject to service of process in this District," i.e. subject to personal jurisdiction, the court determined that venue was proper. *Id.* at 738.

**6.** William Tetley, in *International Maritime and Admiralty Law* 404 (2002), explained the genesis of this connection, noting that in the medieval era, "a procedure known as *processus contra contumacem,* designed to force the contumacious defendant to appear and contest the suit brought against him," developed in England. "The process permitted jurisdiction to be exercised by the Admiralty Court." *Id.*

process requirements. *See e.g., International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Following the merger of admiralty and civil procedure in 1966, "the full scope of Rule 4 extends the personal jurisdiction of the [admiralty] court to any defendant properly served under that rule." *H & F Barge Co. v. Garber Brothers, Inc.,* 65 F.R.D. 399, 404 (E.D.La.1974); *see also* David W. Robertson, *Admiralty Procedure and Jurisdiction after the 1966 Unification,* 74 Mich. L.Rev. 1627 (1976)(describing adoption of Federal Rules of Civil Procedure for admiralty practice). As one court has explained, in the modern context, *In re Louisville* is read to limit personal jurisdiction and venue to defendants "whom the court *can reach* with process. There appears to be no restrictive condition that the process must be served within the geographic territory over which the court is constituted." *Id.* (emphasis added). As the Fifth Circuit has recognized, the *In re Louisville* phrase—"wherever a monition can be served upon the libelee"—is best read to mean "in whichever district a court can reach a defendant with service of process" based on its personal jurisdiction over the defendant. *See In re McDonnell–Douglas Corp.,* 647 F.2d 515, 516 (5th Cir.1981)(stating that "venue lies wherever valid service could have been made upon the defendant corporations" and that "venue and personal jurisdiction

analyses merge"); *Potts,* 401 F.Supp.2d at 738; *H & F Barge Co., Inc.,* 65 F.R.D. at 405.[7]

This understanding is consistent with the motivations behind the *In re Louisville* holding. The *In re Louisville* Court espoused a more liberal rule than then existed in civil actions. *Id.* at 492, 10 S.Ct. 587. As justification, the Court described the difficulty in litigating admiralty cases caused by the parties' frequent absences for long periods of time and noted the need for a convenient and quick method of prosecuting such lawsuits. *Id.* at 493, 10 S.Ct. 587. As *In re Louisville* was meant to expand district courts' ability to bring an admiralty defendant into their courts, an interpretation of its holding that makes establishing venue in an admiralty action *more* difficult than establishing venue in a civil action would run counter to the opinion's intent.

■■■ Key West's argument essentially makes the Court's ability to entertain an admiralty action dependent on the rules governing service of process. Such a posture misconstrues the relationship between service of process, personal jurisdiction, and venue that exists today.

> Service of process, we have come to understand, is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind, or against a particular individual or entity.... Instead, the

---

7. This approach, though most clearly explained by courts within the Fifth Circuit, does not appear to produce results inconsistent with the opinions of other courts that have stated that admiralty venue is proper where the defendant may be served. In each of such cases reviewed by the Court, the outcome would have been the same regardless of whether venue was held to be appropriate where there was jurisdiction or where process could be served. The Court has not found, nor has Key West presented, an admiralty case in which there was personal jurisdiction

but venue was found to be improper. *Meaamaile v. American Samoa,* 550 F.Supp. 1227 (D.Hawai'i 1982), which case Key West brings to the Court's attention, is no exception. In that case, the court did not have personal jurisdiction over the defendant, but the defendant had waived a personal jurisdiction defense by not raising it. *Id.* at 1231 n. 5. The court dismissed the case for failure of service of process and improper venue, noting that Rule 4 of the Federal Rules of Civil Procedure did not authorize service of process upon the defendant. *Id.* at 1230–32.

core function of service is to supply notice of the pendency of a legal action, in a manner and time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.

*Henderson v. United States,* 517 U.S. 654, 671, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996); *see also* 4 Wright & Miller, *Federal Practice and Procedure* § 1063, at 328 (3d ed. 2002) ("The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over a lawsuit."). Therefore, service of process requirements do not determine whether venue is appropriate, and *In re Louisville* should not be construed to so hold.

■ For the above reasons, the Court concludes that, in admiralty, venue is appropriate where there is personal jurisdiction over the defendant. In this action, Key West has conceded that its contacts with the Commonwealth of Virginia are sufficient to justify service of process under the Virginia long-arm statute and to fulfill the requirements of constitutional due process. Therefore, venue is proper in this district, and Key West's Motion to Dismiss or, in the Alternative, Transfer is **DENIED.**

### B. Constructive Trust

■ Count V of the Complaint seeks a constructive trust on Key West's tax revenues, project revenue, or other economic benefits. Key West argues that Count V does not establish that the funds allegedly owed to the Shipyard can be traced to Key West's general tax revenues or project revenues, and therefore should be dismissed for failing to state a claim upon which relief may be granted.

■ Although a court generally must apply federal law in an admiralty action, the court looks to the law of the state that has the most significant relationship to the underlying transaction when there is no federal law that is applicable to the relevant issue. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 320–21, 75 S.Ct. 368, 99 L.Ed. 337 (1955)(holding that court applies state law where there is no applicable federal law); *Amer. Home Assurance Co. v. L & L Marine Serv., Inc.,* 153 F.3d 616, 618–19 (8th Cir.1998)(finding federal choice of law rules, which apply "most significant relationship test," govern in admiralty actions). This case, which concerns fraud and breach of contract allegations arising out of a contract between the parties, does not involve a matter governed by federal law, and the application of state law would not "impair the uniformity and simplicity of admiralty law" or "defeat an otherwise meritorious maritime cause of action." *Byrd v. Byrd,* 657 F.2d 615, 617 (4th Cir. 1981) (citations omitted); *see also Close v. Lloyd,* No. 3:09cv526, 2010 WL 1286690 (E.D.Va. Mar. 26, 2010)(applying state law in admiralty action concerning constructive trust). Here, the negotiation of the underlying contract and the performance of the repair work on the U.S.A.F. Hoyt S. Vandenberg took place in Virginia. Therefore, the Court will apply Virginia law in determining whether the elements necessary to seek imposition of a constructive trust have been asserted.

■ "A constructive trust arises by operation of law, independently of the intention of the parties, in order to prevent what otherwise would have been fraud. Such a trust may be established not only when property has been acquired by fraud or improper means, but also when it has been properly acquired but it is contrary to equitable principles that the property

should be retained, at least for the acquirer's own benefit." *Crestar Bank v. Williams*, 250 Va. 198, 204, 462 S.E.2d 333 (1995) (citations omitted). Here, the Shipyard alleges constructive fraud in Count III of the Complaint. Therefore, in order to plead a claim for such a constructive trust "that is plausible on its face," the Shipyard must allege the elements of the underlying constructive fraud.

The elements of constructive fraud are: 1) a false representation of a material fact, 2) made innocently or negligently, and 3) reliance on the false representation leading to damages. *Sales v. Kecoughtan Housing Co., Ltd.*, 279 Va. 475, 481, 690 S.E.2d 91 (2010). The Shipyard has alleged facts sufficient to support each of these elements of constructive fraud (Compl. ¶¶ 35–41.), and therefore has properly pled its claim for a constructive trust. Key West's assertion, that the benefits it purportedly received from the alleged constructive fraud have not been traced to the funds on which the Shipyard seeks a constructive trust, is a factual matter not to be decided on a Rule 12(b)(6) motion. The Complaint sufficiently alleges enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Therefore, the Court **DENIES** Defendant's motion to dismiss Count V of the Complaint.

For the reasons stated above, Defendant's Motion to Dismiss, or in the alternative, Transfer, and Defendant's Motion to Dismiss Count V, are **DENIED**. Defendant's Motion to Quash Process and Service of Process is **DEEMED** withdrawn, and the Court does not consider it.

It is so ordered.