Maria de Los Angeles Quintana NAVAR-RO, Individually and as next friend of her minor children, Jose Manuel Suarez Quintana, Maria de la Soledad Suarez Quintana, Angel Gabriel Suarez Quintana and Maria del Mar Suarez Quintana

v.

SEDCO, INC., et al.

Beatriz Candelaria Godoy PERDOMO, Individually and as next friend of her minor children, Beatriz Eugenia Diaz Godoy, Maria Aurora Diaz Godoy and Juan Ramon Diaz Godoy

v.

SEDCO, INC.

Angelina Suarez GUERRA, Individually and as next friend of her minor children, Teresa Eloina Ojeda Suarez and Epifania Maria Ojeda Suarez

v.

SEDCO, INC.

Civ. A. Nos. 75–H–1604 to 75–H–1606.

United States District Court,
S. D. Texas,
Houston Division.

April 28, 1978.

Hubert L. Stone, Jr., Corpus Christi, Tex., for plaintiffs.

Dixie Smith, Fulbright & Jaworski, Houston, Tex., for Sedco, Inc.

Alan S. Dale, Eastham, Watson, Dale & Forney, Houston, Tex., for Okanagan Helicopters.

Joseph D. Cheavens, Baker & Botts, Houston, Tex., for Shell Inter. & Shell Deep Water.

*Memorandum and Order*

SINGLETON, District Judge.

The above-styled-and-numbered cause is an action brought under Title 46 U.S.C. § 688 and § 761 et seq. ("Jones Act" and "Death on the High Seas Act," respectively) by the personal representatives of several Spanish nationals who met death in a helicopter crash in connection with their employment on a drilling rig operating off the coast of West Africa. In addition to bringing this action against two business entities and their subsidiaries that were directly involved in the drilling operations ("Sedco" and "Shell"), plaintiffs are seeking recovery from Okanagan Helicopters Limited ("Okanagan").

The complaint states that Okanagan is a Canadian corporation, whose address is 439 Agar Drive, Vancouver International Airport, Vancouver, Canada; that Okanagan "is doing business in the State of Texas and in the United States and is directly involved in Defendants' operations under the 'Sedco-Shell' contract, and therefore this Court has jurisdiction over Defendant Okanagan Helicopters Limited"; that Okanagan "owned and operated the helicopter 'CK–OKH' appurtenant to the drilling vessel 'Sedco 445' under contracts with Defendants for the transportation of Defendants' employees to and from said drilling vessel"; and that the crash of the helicopter was a cause of the death of plaintiffs' decedents.

■■■ Okanagan has filed a motion to quash service and to dismiss for want of personal jurisdiction. Okanagan received service in this case through the Secretary of State pursuant to the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (1964). To prevail over Okanagan's motion, plaintiffs have the dual burden to prove that Okanagan is amenable to process under article 2031b, and that the assertion of jurisdiction over Okanagan under article 2031b complies with due process. *Jetco Electronic Industries v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).[1]

Plaintiffs rely on the following activities of Okanagan to support the assertion of personal jurisdiction over it in this forum:

---

1. Plaintiffs urge that they should not be required to show that Okanagan is amenable to process under article 2031b because they are asserting federally created rights under the Jones Act and Death on the High Seas Act, and further urge that they are entitled to rely on Okanagan's contacts throughout the United States to establish in personam jurisdiction over Okanagan in this court, presumably on the basis that Congress passed the statutes on which their cause of action is based and therefore the entire United States is the relevant "forum" with which the defendant must have minimum contacts. Plaintiffs argue that in a case in which subject-matter jurisdiction is not based on diversity of citizenship, Fed.R.Civ.P. 4 merely incorporates the manner of service prescribed by the state in which the district court sits but does not incorporate any limitations contained therein. Plaintiffs conclude that it is therefore permissible for the court to analyze the jurisdictional question solely in terms of due process and that the court may take into account Okanagan's contacts throughout the United States in deciding the question.

Plaintiffs' first contention has merit in nondiversity cases in which the validity of service of process is sustainable under Fed.R.Civ.P. 4 by other than the manner prescribed by state law. *Lone Star Package Car Co. v. Baltimore & Ohio Railroad Co.*, 212 F.2d 147 (5th Cir. 1954); 4 C. Wright and A. Miller, Federal Practice and Procedure § 1075, at 302 (1969). However, in

(1) Okanagan has directly contracted to and has sent a helicopter and Okanagan employees to work as an integral part of the equipment of the U.S. based operations of the "Sedco 445". This helicopter and crew have no other work to do.

cases such as this one, in which a nonresident defendant is not amenable to process other than by resort to the mechanics of state law, Fed.R.Civ.P. 4(e) provides for service "*under the circumstances* and in the manner prescribed" by such law. The above-italicized wording in Rule 4(e) has been interpreted to mean that a district court's power to exercise in personam jurisdiction is limited to that permitted under the applicable state law. *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416–418 (9th Cir. 1977); *cf. Black v. Acme Markets, Inc.,* 564 F.2d 681, 685 n. 5 (5th Cir. 1977). The anomaly that under Fed.R. Civ.P. 4, the district court's jurisdictional power over the person in federal question cases is dependent on and will vary according to the relevant law in the state in which they sit has been noted by plaintiffs and the courts, *Hartley v. Sioux City & New Orleans Barge Lines, Inc.,* 379 F.2d 354, 356 n. 2 (3d Cir. 1967); *Gkiafis v. Steamship Yiosonas,* 342 F.2d 546, 549 (4th Cir. 1965). However, neither Congress in the Jones Act or Death on the High Seas Act nor the Supreme Court in Rule 4 has given district courts any uniform power of extraterritorial service in maritime cases. *Cf. Black v. Acme Markets, Inc., supra,* in which the effect of section 12 of the Clayton Act, 15 U.S.C. § 22 (authorizing nationwide extraterritorial service) on Rule 4 is discussed.

Plaintiffs allege that the use of article 2031b was authorized by Fed.R.Civ.P. 4(d)(7) as opposed to Rule 4(e). Plaintiffs contend that the assertion of personal jurisdiction over Okanagan obtained under Rule 4(d)(7) through article 2031b need only comply with due process and not the Texas long arm statute, because Rule 4(d)(7) merely provides that service be made in the manner prescribed by state law, without requiring that it be made "under the circumstances" prescribed by state law. Although much has been written by commentators on the relationship between Rule 4(d)(7) and 4(e), few courts have passed on the meaning of the above-stated differences. *See* 2 Moore's Federal Practice § 4.32[1], at 1255–1256 (1977); 4 C. Wright & A. Miller, Federal Practice and Procedure §§ 1112–1114, at 460–470 (1969). The court finds no merit in plaintiffs contentions regarding the differences between Rule 4(d)(7) and 4(e). First, the court believes that after the 1963 amendments to Rule 4, Rule 4(d)(7) should be construed as dealing primarily with service of process within the territorial limits of the state in which the district court sits, unless there exists an applicable federal statute expanding the court's territorial limits for service of process, *Black v. Acme Markets, Inc., supra;* and Rule 4(e) should be viewed as providing the authority for service of process outside of the territorial limits. *See United States v. Montreal Trust Co.,* 35 F.R.D. 216 (S.D.N.Y.1964): 2 Moore's Federal Practice § 4.32[1], at 1226 (1977), and the Notes of the Advisory Committee on Rule 4(e) cited therein. *But see* 4 C. Wright & A. Miller, Federal Practice and Procedure §§ 1114–1115, at 467–473 (1969). Under the construction of Rule 4 suggested by Professor Moore and *Montreal Trust, supra,* service on Okanagan was authorized solely by Rule 4(e), which allows such service only "under the circumstances" prescribed by state law.

Alternatively, the court notes that where Rule 4(d)(7) and 4(e) have been viewed interchangeably as authorizing extraterritorial service pursuant to state long arm statutes, personal jurisdiction questions have been analyzed both in terms of due process and amenability under the state statute that was invoked, notwithstanding the differences in wording between these parts of the rule. In *Time Inc. v. Manning,* 366 F.2d 690 (5th Cir. 1966), subject-matter jurisdiction was based on 28 U.S.C. § 1338 (patents and copyrights) and 28 U.S.C. § 1332 (diversity). The nonresident defendant was served pursuant to Louisiana's long arm statute and moved to dismiss for want of personal jurisdiction. The Fifth Circuit drew no distinction between Fed.R.Civ.P. 4(d)(7) and 4(e) and analyzed defendant's motion in terms of the Louisiana statute and due process:

> The Federal Rules of Civil Procedure permit service of process upon a foreign corporation or on a non-resident in the manner prescribed by the law of the state in which the district court is held . . . Fed.R.Civ.P. 4(d)(7) and 4(e). Two requirements must be met. First, service must conform to state statutory standards, *Sonnier v. Time, Inc.,* W.D.La.1959, 172 F.Supp. 576. Second, the foreign corporation must have sufficient contacts with the state so that application of the state statute will not offend due process. *International Shoe Co. v. State of Washington,* 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

*Time Inc., supra* at 692.

In conclusion, under the provisions of Fed.R. Civ.P. 4 and applicable case law, plaintiffs must show that Okanagan is amenable to jurisdiction both in terms of article 2031b and due process; and plaintiffs may not rely on Okanagan's activities throughout the United States to establish jurisdiction because the relevant forum for purposes of article 2031b is Texas.

They are dedicated to the "Sedco 445" and they or their replacement will remain on the "Sedco 445" as long as the "Sedco 445" is operating in that locality. The "Sedco 445" cannot operate without the Okanagan helicopter and crew.

(2) Okanagan is presently purchasing goods and services from 45 United States companies and is presently doing business with five Texas companies including a current leasing of a helicopter from Bell Helicopter. The American companies from whom Okanagan is making purchases are so numerous that it was impractical for Okanagan to give the dates of each contract or to attach copies of the contract documents to answers to interrogatories. It is clear that there is a continuing flow of purchases of goods and services on an extremely large scale between Okanagan and companies in the United States.

(3) Okanagan has employees actually present in the United States on a continuing and frequent basis as shown by the agreements attached to Okanagan's answers to interrogatories where delivery of helicopters is made to Okanagan from Sikorsky at Stratford, Connecticut, U.S.A. Other helicopters are delivered to Okanagan by delivery at F.A.F. Grand Praire [sic], Texas.

Plaintiffs' "Memorandum of Authorities in Opposition to Motion of Defendant, Okanagan Helicopters Limited to Quash Service of Process and Dismiss Complaints," at 4.

From Okanagan's answers to plaintiffs' Interrogatories it is revealed that the contract (referred to in paragraph one above) was entered into between Okanagan and Defendant Shell Deepwater Drilling Company Ltd., a London, England Corporation; that the five Texas companies with which Okanagan is doing business (referred to in paragraph two above) are ones from which Okanagan is continuously purchasing goods and services by issuing purchase orders signed by Okanagan at its office in Vancouver; that Okanagan is currently leasing a helicopter which is being used outside the United States from Bell Helicopters, Fort Worth, Texas; and that Okanagan traded two helicopters to Texas corporations against the purchase price of four other helicopters in 1975 and 1976 for which Okanagan took delivery at the seller's plant and flew them to Canada (referred to in paragraph three, above).

An affidavit of Verne D. Pecho, Vice President and Finance and Secretary Treasurer of Okanagan states that Okanagan has never operated aircraft in the United States, except for purposes of taking delivery of purchased helicopters at suppliers' plants and flying such helicopters to Canada; that the helicopter involved in the accident on which this cause is based was purchased in Connecticut; that no contracts or operations with regard to such helicopter were undertaken in Texas or the rest of the United States; and that Okanagan does not maintain an agent, employee, office or other property or telephone listing in Texas.

I.

Section four of article 2031b provides:

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Okanagan is "doing business" in this state under article 2031b through its admittedly numerous purchases of goods and services from Texas companies; its contract with Bell Helicopters of Ft. Worth, Texas, for the lease of one helicopter; and its contract with a Texas corporation by which two helicopters were traded against the purchase price of four other helicopters which were accepted by an employee of Okanagan in Texas.

The court finds no merit in defendant's contention that in order to be

amenable to service article 2031b plaintiff's cause of action must arise directly out of defendant's contacts with Texas. First, the Fifth Circuit and the Texas Supreme Court have construed article 2031b as going to the limits of due process, *Product Promotions Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977); and the due process clause has never been interpreted as requiring in all cases that the plaintiff's cause of action arise directly from defendant's contacts with the forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Second, in several decisions upholding a defendant's amenability to service pursuant to article 2031b, the Fifth Circuit has relied on defendant's activities unrelated to the cause of action involved in each case. See *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969); *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir. 1977). Third, in *Eyerly, supra*, the Fifth Circuit expressly rejected the contention (made by Okanagan in this case) that the Texas Supreme Court has interpreted article 2031b to require that the cause of action sued upon arise directly from the defendant's activities in the forum. See *Eyerly, supra*, at 599, footnote 12. Fourth, the court is aware of no Texas decision holding article 2031b inapplicable to causes of action not arising directly from the defendant's activities with the forum.[2] Fifth and finally, the recent decision of the Texas Supreme Court in *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977), appears to the court to foreclose any argument that article 2031b should be read in the restrictive fashion urged by Okanagan. The court stated as follows at 762:

> We let stand the statement in *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ. App.—Austin 1973, writ ref'd n. r. e.) "that the reach of art. 2031b is limited only by the United States Constitution." See also *National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth 1972, writ ref'd. n. r. e.). The Federal Courts have similarly construed article 2031b. See *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974), and the cases there cited. Furthermore, such a construction is desirable in that it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define "doing business."

For these reasons, the court now proceeds to focus on the constitutional aspect of the jurisdictional motion at issue.

## II.

Two inquiries need be made to determine whether the court may exercise jurisdiction over Okanagan's person consistent with due process. First it must be determined

---

**2.** As stated in the text of this opinion, in *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969), the Fifth Circuit expressly rejected the contention that *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966), held article 2031b inapplicable to causes of action arising separate and apart from a defendant's business activities within Texas. Although *O'Brien* quoted the following words from an opinion of the Supreme Court of Washington, "the cause of action must arise from or be connected with, such act or transaction . . . . [*Tyee Construction Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245, 251 (1963)]," 399 S.W.2d at 342, both the Washington court and the Texas Supreme Court were discussing their view of the requirements under the due process clause for the assertion of jurisdiction over nonresidents. Each of the subsequent Texas court decisions of which this court is aware which have reiterated the requirement that the cause of action must relate to the defendant's activities in the forum has cited *O'Brien* as authority for this proposition and was discussing the limitations of due process and not article 2031b. See *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.); *Sun-X Int'l Co., Inc. v. Witt*, 413 S.W.2d 761 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.); *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.); *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977). This court is not bound to follow Texas' interpretation of the due process clause.

whether the defendant has some minimum contact with Texas resulting from an affirmative act on Okanagan's part. Second, it must be asked whether it would be fair and reasonable to require Okanagan to defend this action in Texas. *Product Promotions, Inc. v. Cousteau, supra,* at 494.

█ As to the first inquiry, the court finds that Okanagan has such minimum contacts with Texas that will satisfy due process. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court elaborated on the requirement of minimum contacts:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Id.,* at 253, 78 S.Ct. at 1240.

Okanagan's admittedly continuous purchases of goods and services from Texas,[3] its leasing of a helicopter from a Texas company, and its purchase and acceptance of other helicopters within this state's borders constitute affirmative and purposeful acts within Texas of a quality and nature to support jurisdiction over its person in this forum for a claim relating to the business for which such activities were conducted. According to the evidence presented, Okanagan's transactions within this forum were neither insubstantial nor infrequent; and through such transactions Okanagan has enjoyed the benefits and protections of the laws of Texas.

The court rejects Okanagan's contention that due process requires that the plaintiffs' cause of action arise directly from its purposeful activities here. As noted earlier in this opinion the Supreme Court has not interpreted the due process clause so nar-

---

**3.** The third question contained in plaintiffs' "Supplemental Interrogatories to Defendant, Okanagan Helicopters Limited" and the answer contained in Okanagan's "Answers to Supplemental Interrogatories to Defendant Okanagan Helicopters Limited" read, in part, as follows:

3. Please state whether or not the Defendant, Okanagan Helicopters Limited, has any contracts or other types of business agreements with any United States citizen, business entity or corporation. If your answer is "yes", then please give the following information:

(a) Please state the name of the United States citizen, business entity or corporation with whom Defendant has such contract.

(b) Please state the date of the contract.

(c) Please state the exact terms of the contract (in place of copying the terms, a copy thereof may be attached).

*ANSWER:* Yes.

(a) There are at present approximately 45 U.S. companies from whom Okanagan purchases goods and services. The majority of the suppliers are located in California. However, since the beginning of this year Okanagan has made, or is making, purchases from the following companies located in Texas: Marathon Batteries, Houston; Stinson Field Aircraft, San Antonio; Aerospatiale Helicopter Corp. (Vought Helicopter Corp.) Grand Prairie; and Bell Helicopter Co., Fort Worth.

Additionally, Okanagan is currently leasing a helicopter from Bell Helicopter Company which is being used outside the United States.

(b) In view of the number of such contracts it would be impractical to list the date of each such contract. However, Okanagan does make purchases from many of these companies on a continuing basis.

(c) As stated above with respect to listing the date of each contract, because of the volume of purchases made by Okanagan from U.S. suppliers and the concomitant number of contracts, it would be impractical to either state the terms of each such contract or to attach copies of same. However, the contracts customarily consist of purchase orders issued by Okanagan on its standard purchase order form. Attached is a representative copy, the terms of which would vary only slightly. When purchases are made from Bell Helicopter, Bell's purchase order form is usually used. Attached is a representative copy of a purchase order with Bell Helicopter Company. Also attached are representative copies of a contract entered into with Sikorsky Aircraft Division of United Technologies Corporation, Stratford, Connecticut, and a purchase order with Aerospatiale for the purchase of helicopters from them. Certain confidential commercial information, such as purchase prices, has been deleted.

rowly. *International Shoe, supra,* 326 U.S. at 318, 66 S.Ct. 154; *Perkins, supra* 342 U.S. at 446, 72 S.Ct. 413; and the Fifth Circuit has upheld jurisdiction in cases where the defendant's activities in the forum were not directly connected with the cause of action sued upon. In *Eyerly, supra,* the court stated:

> We do, however, note that a light grey line has been drawn where a non-resident corporation is sued in one state for a tort committed in a third state. Suppose a situation where a corporation, whose residence is in state X, commits a tort in state Y and is sued for that tort in state Z. Unless the corporation had substantial contacts with state Z, the courts in state Z could not assert jurisdiction over the person of the foreign corporation. *Turner v. Jack Tar Grand Bahama, Ltd.,* 5 Cir. 1965, 353 F.2d 954; *Lindley v. St. Louis-San Francisco Ry. Co.,* 7 Cir. 1968, 407 F.2d 639; *Blount v. Peerless Chemicals (P. R.), Inc.,* 2 Cir. 1963, 316 F.2d 695, cert. denied, *Colbert v. Peerless Chemicals Inc.,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62; cf. *Pliler v. Asiatic Petroleum Co.,* S.D.Tex.1961, 197 F.Supp. 212. Where, however, the nonresident corporation's contacts with state Z are found to be substantial, the "long arm" assertion of jurisdiction has been upheld. *Hoffman v. Air India,* 5 Cir. 1968, 393 F.2d 507, cert. denied 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260, see *Hutter Northern Trust v. Door County Chamber of Commerce,* 7 Cir. 1968, 403 F.2d 481. This distinction is supported by the following language in *Perkins v. Benguet Consolidated Mining Co.,* 1952, 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485, 493:

> "The instant case takes us one step further to a proceeding in personam to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in *Interna-*

> *tional Shoe Co. v. Washington,* supra, 326 U.S. at pages 318, 319, 66 S.Ct. at pages 159-160, [90 L.Ed. 95, 103, 104, 161 A.L.R. 1057].

> " * * * there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings distinct from those activities. [Cases cited]."

*Id.* at 598, footnote 7.

The Supreme Court recently rejected the interpretation of the due process clause urged by Okanagan. In *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), the court held that the Society's maintenance of two offices in California which did nothing but solicit advertising for the Society's magazine constituted a connection with that state that was sufficient to constitutionally make the Society (incorporated in the District of Columbia) liable for collection of a California use tax on mail order sales made from the District of Columbia. The court specifically held that due process did not require that the Society's California activities be related to the activity subject to the tax, but rather that there be "some definite link, some minimum connection" with the forum state. Relying on *National Geographic* the Fifth Circuit has observed that:

> If a "minimum connection" is all that need be shown to exert the state's power to tax, *a fortiori,* a non-resident may be required to defend an action in state court even though the suit bears no relation to the activities deemed necessary and sufficient to constitute minimum contacts.

*Wilkerson v. Fortuna Corp.,* 554 F.2d 745, 750 (5th Cir.), cert. denied, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). For these reasons, the court finds that Okanagan's transactions with Texas constitute a constitutionally substantial and continuous connection with this forum for purposes of this suit, notwithstanding the fact that the cause of action sued upon did not arise directly therefrom.

As to the second inquiry, the court finds that it is fair and reasonable to require Okanagan to defend this action in Texas. Although the State of Texas has no particular interest in providing a forum for non-resident plaintiffs suing non-resident defendants on a cause of action to which Texas law will not apply, this factor is of little weight in determining the fairness of requiring a defendant to defend a suit based on federal maritime law. While it is more convenient to plaintiffs to be able to litigate in the forum of their choice, and it may be more convenient to Okanagan to litigate elsewhere, the court is persuaded that Okanagan would suffer no inconvenience or hardship rising to a constitutional degree from being required to defend this action here. It cannot be great inconvenience for a corporation which does business in several parts of the world and which has sent its employees to Texas for the purpose of trading or purchasing helicopters to litigate this cause of action in Texas. The Supreme Court has observed that ". . . modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity." *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Furthermore notwithstanding the fact that plaintiffs' cause of action did not arise directly from Okanagan's activities here, those activities (i. e., the acquisition of helicopters and other equipment) concerned the type of business Okanagan was engaged in with respect to this suit. The court has already noted that Okanagan has voluntarily affiliated itself with several Texas businesses cn a continuing basis and has enjoyed the benefits and protections of Texas law in relation to those activities. In light of the degree and nature of Okanagan's economic activities conducted within this forum and the relative equities of requiring Okanagan to defend this suit in Texas, the court concludes that its assertion of jurisdiction over Okanagan's person pursuant to article 2031b does not violate due process.

Therefore, it is ORDERED that Okanagan Helicopters Limited's motion to quash service and dismiss for want of in personam jurisdiction be, and the same is hereby, DENIED.