James **GAVELEK**, Plaintiff,

v.

**COSCOL PETROLEUM CORPORATION,
Defendant.**

**Civ. A. No. 79–70713.**

United States District Court,
E. D. Michigan, S. D.

Dec. 28, 1979.

---

Robert E. Swickle, Detroit, Mich., for plaintiff.

Paul D. Galea, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

The Plaintiff's complaint in this cause alleges in Paragraph one that the action is brought "in accordance with an act of Congress known as the Jones Act, 46 U.S.C. § 688, and in accordance with the General Maritime and Admiralty Law." In Paragraph Four, the Complaint reads, "[p]laintiff thrusts two causes of action against the Defendant, namely: (1) negligence of Defendant under the Jones Act wherein Defendant failed to provide Plaintiff with a safe place to work, and (2) unseaworthiness of the said vessel under the General Maritime and Admiralty Law." The Complaint prays for $800,000.00 in damages.

In Paragraph Two, the Plaintiff alleges that he was injured on March 16, 1978 when a block on the S.S. Coastal California, a vessel owned and operated by his employer, Coscol Petroleum Corporation, broke and fell upon him.

Service was effectuated by certified mail to the Defendant's offices in Houston, Texas and to the Michigan Corporation & Securities Commission in Lansing, Michigan.

In response, Defendant filed a timely Motion to Quash Service and Dismiss Plaintiff's Complaint. The Defendant maintained that Coscol does not own or operate the SS Coastal California, but rather that it was owned and operated by Sequoia Tankers, Inc. on all dates which are pertinent to this lawsuit. Additionally, the Defendant claims that service of process upon the Defendant was ineffective because neither Coscol nor Sequoia are licensed to do business in Michigan. Two affidavits are attached to the Motion. The affidavit of C. E. Neubauer, Vice President of Sequoia, indicates that (1) Sequoia is a Delaware Corporation, (2) it is the sole owner and operator of the S.S. Coastal California, (3) the Plaintiff was its employee when the injury occurred on the vessel, (4) the vessel is now exclusively engaged in coastwide trade between San Francisco and Los Angeles, (5) Sequoia has no office, employees or representatives in Michigan, (6) it has not conducted business in Michigan, and (7) the S.S. Coastal California, during the term of Sequoia's ownership of that vessel, has never been in a Michigan Port or upon the Great Lakes.

The affidavit of Paul Galea, one of the attorneys for the Defendant, states that a record search of the Michigan Department of Commerce, Corporate Records Division, establishes that neither Sequoia nor Coscol are qualified to do business in Michigan.

In reply, the Plaintiff asserts that Coscol is a subsidiary of Coastal States Gas Corporation. The Plaintiff argues further that if Sequoia did, in fact, own the vessel, it never identified itself as the Plaintiff's employer. Rather, it is claimed by Plaintiff, that discovery will establish that either Coscol or its parent Corporation, Coastal States Gas, was in fact the Plaintiff's employer. No affidavits in support of these propositions were submitted.

The Defendant then filed the affidavit of one Peter R. Hunter, its Senior Vice President. That affidavit asserts that Coscol (1) is a Delaware Corporation with its principal place of business in Texas, (2) does not have any office, employees, or representatives in Michigan, (3) has not conducted any business in this State, and (4) has never chartered a vessel to go to a Michigan Port or upon the Great Lakes.

The threshold question in any lawsuit relates to whether the Court has subject matter jurisdiction.[1] The parties here do not contest that such jurisdiction exists, and the Court agrees.[2]

Personal jurisdiction over the Defendant is at issue here. A seaman, who makes a

---

1. *See, e. g., H & F Barge Co. v. Garber Bros. Inc.,* 65 F.R.D. 399, 401 (E.D.La.1974).

2. The Court would note that a claim under the Jones Act offers some difficulty as to which jurisdictional statute it can be brought under.

Jones Act claim, can only maintain such an action *in personam*.[3] The Plaintiff has attempted to obtain such jurisdiction over the Defendant by certified mail to its office in Houston.

It has been held that a Jones Act claim does present a federal question under 28 U.S.C. § 1331. *Panama R.R. & Co. v. Johnson*, 264 U.S. 375, 383–84, 44 S.Ct. 391, 68 L.Ed. 748 (1924). However, the Court did not reach the issue of whether the § 1331 statutory amount had to be satisfied. *See Ballard v. Moore-McCormack Lines, Inc.*, 285 F.Supp. 290, 293 (S.D.N.Y.1968). Contrastingly, a general maritime law claim, absent a Jones Act claim, has not been considered to present a § 1331 question. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1958).

According to one authority, however, Supreme Court precedents subsequent to the *Panama RR* case suggest doubt about federal question jurisdiction. This doubt is apparently premised upon recognition by the Court that the Jones Act, in part, was promulgated pursuant to Article III, ¶ 2 (admiralty and maritime clause) and Article I, § 8, cl. 18 (the necessary and proper clause) to enact laws pertaining to admiralty and maritime matters. *See Ballard v. Moore-McCormack Lines, Inc.*, 285 F.Supp. at 294. Additionally, therefore, it has been held that, since a Jones Act claim is a maritime action, the District Court has jurisdiction without regard to jurisdictional amount under 28 U.S.C. § 1333, the admiralty and maritime jurisdiction statute. This position has also been criticized on the basis that, albeit the Jones Act was in part enacted under Article III, ¶ 2, it does not automatically confer 28 U.S.C. § 1333 jurisdiction over *statutory* maritime causes. *Rowley v. Sierra S.S. Co.*, 48 F.Supp. 193, 196 n.1 (N.D.Ohio 1942). *See also Ballard v. Moore-McCormack Lines, Inc.*, 285 F.Supp. at 294 & n.6.

Further, it has been argued that there is § 1331 jurisdiction, but that Jones Act claims are exempted from the jurisdictional amount requirement because the Act, of its own force, bestows jurisdiction. Comment, *The Tangled Seine*, 57 *Yale L.J.* 243, 265–67 (1947). This seems unlikely, however, in view of Supreme Court construction of the word "jurisdiction" in the statute to mean venue. *Panama R.R. & Co. v. Johnson*, 264 U.S. at 384–85, 44 S.Ct. 391. *See Ballard v. Moore-McCormack Lines*, 285 F.Supp. at 295.

Finally, it has been held that a Jones Act claim gives rise to jurisdiction under 28 U.S.C. § 1337 because Congress, in enacting the statute, was regulating Commerce pursuant to its ennumerated power under Article I, § 8, cl. 3. *O'Donnel v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 39, 63 S.Ct. 488, 87 L.Ed. 596 (1943). *See*

In civil actions, service of process is governed by Federal Rules of Civil Procedure 4. It should be noted that a claim brought within the admiralty jurisdiction is subject to Supplemental Rules A–F.[4] However,

*Ballard v. Moore-McCormack Lines, Inc.*, 285 F.Supp. at 296. *See also Marshall v. District of Columbia Government*, 182 U.S.App.D.C. 105, 108, 559 F.2d 726, 729 n.9, 733 & n.9 (D.C.Cir. 1977).

Also, the Court would note that the Supreme Court expressly recognized the right of a seaman to join general admiralty and maritime law claims with a claim under the Jones Act in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963).

Despite the confusion about which statute provides a jurisdictional basis for the claims before this Court, it should be noted that the problems that gave rise to a discussion of such in those cases (primarily jurisdictional amount) are not present here. Consequently, jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1337 would be appropriate. Because it is unnecessary, the Court will refrain from discussing the appropriateness of 28 U.S.C. § 1333 as a jurisdictional basis.

Finally, it would appear that this Complaint, as it presently stands, has complied with Rule 9(h), although the Rule is not cited. This seems especially true in light of the demand for a jury trial. Accordingly, the Complaint appears to be one brought under the Jones Act with a pendant claim of unseaworthiness under admiralty and maritime law. *See Lopez v. Oldendorf*, 545 F.2d 836 (2nd Cir. 1976). Of course, both are triable by jury when so joined under the authority of *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720.

The Court would also note that, if the parties' citizenship is diverse, state common law action could possibly be maintained under 28 U.S.C. § 1332, with pendant claims for unseaworthiness and under the Jones Act. However, the Court need not address that here, given the requirement that diversity jurisdiction must be specifically pleaded. *Assessors v. Osbornes*, 76 U.S. (9 Wall.) 567, 19 L.Ed. 748 (1869); *Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303, 3 L.Ed. 108 (1800); *Turner v. Enrille*, 4 U.S. (4 Dall.) 7, 1 L.Ed. 717 (1799); *Bingham v. Cabot*, 3 U.S. (3 Dall.) 19, 1 L.Ed. 491 (1798); *Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 640 (S.D.N.Y.1977).

3. *Plamals v. S.S. Pinar Del Rio*, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928).

4. Fed.R.Civ.P. 9(h); 2 Moore's Federal Practice ¶ 4.02 [1.–1] at 4–41 & nn. 3–4.

Supplemental Rule A provides that the general Civil Rules apply unless inconsistent with the Supplemental Rules. There appearing no such inconsistency here, the Court is left only with the Civil Rules to resolve the process question.

Extraterritorial service, which is involved here, is covered by two subsections of Rule 4.[5] Rule 4(f) is clearly not applicable because the maximum limit, to which extraterritorial service can be effectuated, is one hundred (100) miles "from the place in which the action is commenced."

Thus, the Court is left with Fed.R.Civ.P. 4(e). However, before deciding if service under that provision has properly been effectuated, it must be determined that its application is permitted here.

■ Rule 4(e) permits service of process in federal courts "under the circumstances and in the manner prescribed" by state law. At one time, limits of effective service were thought to be the state's territorial boundaries.[6] Although such limitations still play a vital role in ascertaining when, and under what circumstances, the hand of a sovereign state can constitutionally reach out and assert its authority over a Defendant,[7] the strict territorial limitations have been abandoned. The limitations are now premised upon illusive considerations regarding the impact of the Defendant's activities upon the state and its citizens and whether subjecting the Defendant to the lawsuit in the state would violate traditional notions of fair play and substantial justice.[8]

■ Although federal decisions often deal with such concerns, it has been pointed out that considerations determinative of federal *in personam* jurisdiction, at least in non-diversity cases, are essentially different.[9] Consequently, it has been successfully argued that when federal jurisdiction is not based upon diversity, Rule 4 merely incorporates the manner of service permitted by the state in which the federal court sits; however, it does not incorporate any of the limitations contained therein.[10]

■ Nevertheless, when the forum state has extended its jurisdictional reach to the limits permitted by the Constitution, it will make little difference whether federal or state law controls, even in diversity cases.[11] Michigan's long-arm statute [12] has been considered by Michigan Courts to be the broadest grant of jurisdiction which is consistent with the Due Process Clause.[13] In view of this, any differences between federal and state law concerning *in personam* jurisdiction are of nominal, if any, significance.

Some additional comments should also be made here. In *Navarro v. Sedco, Inc.*,[14] the Plaintiff brought action under the Jones Act,[15] and the Death on the High Seas Act.[16] The contention made by the Plain-

---

**5.** *See* Fed.R.Civ.P. 4(e) & (f).

**6.** *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877).

**7.** *Hanson v. Denckla*, 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

**8.** *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See also Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

**9.** *H & F Barge Co. v. Garber Bros. Inc.*, 65 F.R.D. at 401 & nn. 1–2. *See also* Hart & Wechsler, *The Federal Courts & the Federal System*, 1106–13 (2d ed. 1973); Green, *Federal Jurisdiction in Personam of Corporations & Due Process*, 14 *Vand.L.Rev.* 967 (1961).

**10.** *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355, 1357 n.1 (S.D.Tex.1978). *See also Lone Star Package Car Co. v. Baltimore*, 212 F.2d 147 (5th Cir. 1954); 4 Wright & Miller, *Federal Practice & Procedure*, § 1075, at 302 (1969).

**11.** 4 Wright & Miller, *Federal Practice & Procedure*, § 1075, at 303.

**12.** Mich.Comp.Laws Ann. § 600.715 (1968).

**13.** *See Microelectronic Sys. Corp. v. Bamberger's*, 434 F.Supp. 168, 170 (E.D.Mich.1977).

**14.** 449 F.Supp. at 1357–58 n.1.

**15.** 46 U.S.C. § 688.

**16.** 46 U.S.C. § 761 et seq.

tiff in the face of a Motion to Quash was that the Court could analyze the effectiveness of service solely in terms of due process and the Defendant's contact with the United States since the basis of the Court's subject matter jurisdiction was not diversity. The Court rejected this argument since the non-resident Defendant would be amenable to service of process only by machinations of state law pursuant to Rule 4(e). The Court cited case authority that the words of Rule 4(e) "under the circumstances" within the phrase, "under the circumstances and in the manner prescribed" by state law has been "interpreted to mean that a district court's power to exercise *in personam* jurisdiction is limited to that permitted under the applicable state law." [17]

The Plaintiff then argued that the "under the circumstances" language of Rule 4(e) does not appear in Rule 4(d)(7) and that the federal court need only comply with due process concerns, and not the Texas long arm statute, when acting pursuant to Rule 4(d)(7). The Court rejected this contention on alternative grounds. First, it noted that there was substantial commentary regarding the differences between subrules 4(d)(7) and 4(e).[18] Secondly, the Court observed that the 1963 amendments to Rule 4 have the effect of applying Rule 4(d)(7) to service within the state where the district court sits, and Rule 4(e) to service outside the state.[19]

Finally, the Court noted that, even when subrules 4(d)(7) and 4(e) have been viewed as interchangeably authorizing extraterritorial service pursuant to state long arm statutes, the propriety of exerting personal jurisdiction over the Defendant has been analyzed in terms of due process and amenability under the state long arm statute, without out reference to differences of working in the subrules.[20]

Consequently, the Plaintiff, in order to sustain service upon this Defendant, must show amenability to service under the due process standards and the state long arm statute to obtain effective service under Rule 4(e) (or Rule 4(d)(7) for that matter). Because Michigan's long arm statute goes to the limits of due process, our analysis here is concerned only with whether subjecting this Defendant to this lawsuit impinges upon its due process rights under the *International Shoe* standard.[21] Before getting to that analysis, two comments would be appropriate, however.

First, service, pursuant to Rule 4(e), in cases containing admiralty claims has been expressly approved.[22]

Second, taken alone, the contention of the Defendant (to wit, the Plaintiff has the wrong Defendant before the Court because it never owned the S.S. Coastal California) is not properly before the Court. Such an issue would have been properly before this Court had a Motion for Summary Judgment been filed pursuant to Fed.R. Civ.P. 56. We cannot transform a Motion to Quash Service of Process into a Summa-

---

17. *Navarro v. Sedco, Inc.*, 449 F.Supp. at 1358 n.1. *See also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 416–18 (9th Cir. 1977); *cf. Black v. Acme Markets, Inc.*, 564 F.2d 681, 685 n.5 (5th Cir. 1977).

18. *See* 2 Moore's Federal Practice ¶ 4.321, at 1255–56 (1977); 4 Wright & Miller, *Federal Practice & Procedure* §§ 1112–14, at 460–70 (1969).

19. *Navarro v. Sedco, Inc.*, 449 F.Supp. at 1358 n.1. *See also Black v. Acme Markets, Inc.*, 564 F.2d at 685 n.5; *United States v. Montreal Trust Co.*, 35 F.R.D. 216 (S.D.N.Y.1964); 2 Moore's Federal Practice ¶ 4.32[1], at 1226 (1977).

20. *Time Inc. v. Manning*, 366 F.2d 690, 692 (5th Cir. 1966).

21. *See Microelectronic Sys. Corp. v. Bamberger's*, 434 F.Supp. 168, at 171.

22. *Elefteriou v. Tanker Archontissa*, 443 F.2d 185, 187 (4th Cir. 1971); *Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 548–49 (4th Cir. 1965); *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355; *East Asiatic Co. v. Indomar, Ltd.*, 422 F.Supp. 1335, 1341 (S.D.N.Y.1976); *H & F Barge Co. v. Garber Bros. Inc.*, 65 F.R.D. 399. *See also Grevas v. M/V Olympic Pegasus*, 557 F.2d 65, 67 (4th Cir. 1977).

ry Judgment Motion without substantially prejudicing the rights of the Plaintiff.[23]

In this Circuit, the issue as to whether the *International Shoe* standard has been satisfied in any given case is determined by three separate criteria:

First, the Defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

Second, the cause of action must arise from the Defendant's activities there. Third, the acts of the Defendant or consequences caused by the Defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendant reasonable.[24]

 Given these criteria, this Court's task is a relatively simple one. The undisputed facts are that the Defendant does not have an office, employees, or representative in Michigan, and that it has never done business in Michigan. Additionally, the vessel upon which the alleged injury occurred has never been in a Michigan Port or upon the Great Lakes. All that can be inferred from this is that the injury occurred somewhere other than within the State of Michigan or upon its waters. Moreover, the uncontradicted affidavits indicate that the Defendant did not own the subject vessel at the time of the alleged injury, and the Plaintiff was not in its employ when the injury occurred. If that were not enough, the undisputed affidavits further indicate that Sequoia Tankers, Inc., the entity whom the Defendant identifies as the owner of the S.S. Coastal California, and as the employer of the Plaintiff at the time of the alleged accident, has never conducted business in Michigan nor has it any office, employees or representatives in this state.

Clearly, (1) this Defendant has *not* purposefully availed itself of the privilege of acting in the forum or causing a consequence here, (2) the cause of action does *not* arise out of the Defendant's activities, and (3) the acts of the Defendant or consequences caused by the Defendant have not a substantial enough connection with the forum to make the exercise of jurisdiction over the Defendant reasonable.

Accordingly, the Motion to Quash Service and Dismiss Plaintiff's Complaint must be, and is, granted.

---

23. *Cf.* Fed.R.Civ.P. 12(b)(6) (last sentence).

24. *Pickens v. Hess*, 573 F.2d 380, 385–86 (6th Cir. 1978); *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377, 379 (6th Cir. 1978); *McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 570 F.2d 594, 601 n.3 (6th Cir. 1978); *Davis H. Elliott Co. v. Caribbean Util. Co.*, 513 F.2d 1176, 1181 & n.3 (6th Cir. 1975);

*In Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Thermothrift Ind., Inc. v. Mono-Therm Insul. Sys.*, 450 F.Supp. 398, 402–03 (W.D.Ky.1978); *Microelectronic Sys. Corp. v. Bamberger's*, 434 F.Supp. 168, 171 (E.D. Mich.1977).