**Charles R. LONG, Plaintiff,**

v.

**The VESSEL "MISS IDA ANN", Desco Marine, A Division of Whittaker Corporation and West Shore Shrimp Company, Incorporated, Defendants.**

**Civ. A. No. B–78–126.**

United States District Court,
S. D. Texas,
Brownsville Division.

May 8, 1980.

---

212

Benton Musslewhite, Inc., Houston, Tex., for plaintiff.

Marshall W. Graham, Harlingen, Tex., Charles F. Clark, Tampa, Fla., Gordon Briscoe, Harlingen, Tex., for defendants.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

This is an action for personal injuries sustained while working on the shrimp boat, Miss Ida Ann. The complaint alleges that while the ship was in navigation approximately sixty-five miles offshore from Port Mansfield, Texas, the Plaintiff stepped and fell in the wheelhouse while attempting to maneuver the ship on rough seas. The Plaintiff, who owned the Miss Ida Ann at the time of the accident, sued the vessel in rem and Defendants West Shore Shrimp Company, Inc. (West Shore) and Desco Marine in personam seeking to recover for his injuries. Plaintiff's complaint essentially alleges that the ship was unseaworthy and that the other Defendants breached certain duties owed to the Plaintiff, which resulted in his injuries. Federal jurisdiction is predicated on the Jones Act, 46 U.S.C. § 688 (1976), as to the Miss Ida Ann and ostensibly on diversity of citizenship as to the products liability claims against the other two Defendants. See 28 U.S.C. § 1332(a)(1) (1976). Although not specifically pled, subject matter jurisdiction over the claims against Defendant Desco Marine and Defendant West Shore apparently lies under the general maritime law. 28 U.S.C. § 1333(1) (1976); see generally Jig the Third Corp. v. Puritan Marine Insurance Underwriters' Corp., 519 F.2d 171, 175–76 (5th Cir. 1975), cert. denied sub nom. Atlantic Marine, Inc. v. Jig the Third Corp., 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976). Defendant West Shore previously moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. Fed.R. Civ.P. 12(b)(2). In order to oppose this motion, the Plaintiff was granted leave to amend his complaint to more specifically allege personal jurisdiction and was given additional time to conduct discovery on the jurisdictional issue. Discovery on this issue having been completed, this Court must now decide the propriety of West Shore's Motion to Dismiss.

■ Defendant West Shore was served pursuant to Rule 4 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 4(e). Rule 4, in essence, borrows the state long-arm statute when service is to be effectuated upon a party not an inhabitant of or found within the forum state. Id. The Texas long-arm statute is codified in Article 2031b of the Texas statutes. Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964) (amended 1979). In determining whether jurisdiction is proper under the Texas statute, a court must utilize a two-pronged test. First, a court must determine that Texas law confers jurisdiction over the defendant. Second, if it does, then federal law must be applied to determine whether the assertion of jurisdiction over the defendant comports with due process. Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 489 (5th Cir. 1974); Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir. 1973). In Texas, these two inquiries would seem to merge as the Texas Supreme Court has interpreted its long-arm statute to be as broad as the due process clause will allow. U–Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760, 762 (Tex.1977); see generally Product Promotions, Inc. v. Cousteau, 495 F.2d at 491–92; Everly Aircraft Co. v. Killian, 414 F.2d 591, 599 (5th Cir. 1969); Castanho v. Jackson Marine, Inc., 484 F.Supp. 201, 204 (E.D. Tex.1980).

■ The party seeking to invoke the jurisdiction of a federal court has the burden of establishing that such a jurisdiction exists. Product Promotions, Inc. v. Cousteau, 495 F.2d at 490. This burden extends

to the issue of personal jurisdiction. *Id.* In order to meet this burden, a plaintiff need only make a prima facie showing of the facts upon which jurisdiction is predicated. *Id.* at 490–91. The Texas long-arm statute provides that any foreign corporation which does business in this State but does not maintain a regular place of business in this State or a designated agent upon whom service may be made for causes of action arising out of said business done in this State, is conclusively deemed to consent to the appointment of the Texas Secretary of State as its agent for service of process for suits arising out of business done in Texas. Tex.Rev.Civ.Stat.Ann. art. 2031b, § 3 (Vernon 1964) (amended 1979). Another section of the same statute provides that a corporation shall be deemed doing business "by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State." *Id.* § 4. Contrary to the Plaintiff's assertions, neither the commission of a tort test nor the contracting test is met in the present case.

 In its original brief in opposition to the Defendant's Motion to Dismiss, the Plaintiff asserts that the injury which forms the basis of this lawsuit occurred within the territorial waters of the Southern District of Texas. As a general rule, in ruling on a motion to dismiss for lack of personal jurisdiction, the allegations in the plaintiff's complaint, except insofar as controverted by affidavits, must be accepted as true. *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.1 (5th Cir. 1977). The complaint alleges "[a]t all times material to this lawsuit, the Vessel 'Miss Ida Ann', . . . was in navigable waters sixty-five miles offshore from Port Mansfield, Texas." Plaintiff's Second Amended Original Complaint ¶ V. The complaint also alleges that the injury in question occurred on October 19, 1975. *Id.* The Texas Coastal Waterway Act of 1975, which took effect on September 1, 1975, provides that the term "coastal public lands" means "all or any portion of the state-owned submerged land, the waters overlying those lands, and all state-owned islands or portions of islands that may be affected by the ebb and flow of the tide." Tex.Rev.Civ.Stat.Ann. art. 5415e–2, § 4(a) (Vernon Supp.1979). A federal statute, The Submerged Lands Act, as interpreted by the United States Supreme Court, provides that Texas only owns the submerged lands within three marine leagues (approximately ten and one-half statutory miles) of its Gulf coast. 43 U.S.C. § 1301(b) (1976); *United States v. Louisiana*, 363 U.S. 1, 64, 80 S.Ct. 961, 996, 4 L.Ed.2d 1025, 1064 (1960). Since Texas has set its Gulf boundary by reference to state-owned submerged lands and since the State cannot own any submerged land located beyond ten and one-half statutory miles of its Gulf coast, this Court is somewhat skeptical of the Plaintiff's assertion that an accident which occurred sixty-five miles off the coast occurred within the territorial waters of Texas. Since the tort was not committed in whole or in part in Texas, the Plaintiff does not come within the literal grasp of section 4 of the long-arm statute.[1]

 Neither can the Plaintiff rely on the provision of the long-arm statute which defines "doing business" as entering into a contract by mail or otherwise with a resident of Texas when such contract is to be performed in whole or in part by either party in this State. Tex.Rev.Civ.Stat.Ann. art. 2031b, § 4 (Vernon 1964) (amended 1979). In order to make a prima facie showing of the facts on which jurisdiction is predicated under the contract portion of the

---

1. The Plaintiff cited numerous cases concerning one who places an item in the stream of commerce which causes injury within a state. Since this Court does not believe that the injury here was suffered in Texas, these cases need not be discussed. Suffice to say that the vitality of such decisions, as applied to one who is not a nationwide manufacturer and who has no other contacts with the forum state, has been seriously undermined by the recent Supreme Court decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see generally Oswalt v. Scripto, Inc.*, 616 F.2d 191, 196–202 (5th Cir. 1980).

statute, the Plaintiff must show that (1) a contract to be performed in whole or in part within Texas existed between a Texas resident and another party and (2) the present suit arose out of that contractual arrangement. *Product Promotions, Inc. v. Cousteau*, 495 F.2d at 491. In the present case, the problem is that the Plaintiff at the time of the sale was a Florida resident although he did spend much time in Texas ports. The word resident has many meanings in the law, largely determined by the statutory context in which it is used. *Kelm v. Carlson*, 473 F.2d 1267, 1271 (6th Cir. 1973); *Arredondo v. Brockette*, 482 F.Supp. 212, 221 (S.D.Tex.1979). Within the context of Article 2031b, residence seems to mean something more than mere physical presence and thus is more closely related to the concept of domicile. Since the Plaintiff signed the purchase contract reciting that he was a Florida resident, he cannot rely on the contracting provision of section 4 of the long-arm statute.

The tests enumerated in subsection 4 of Article 2031b are in no way intended to be exclusive. Indeed, that section expressly recites that its definition does not include "other acts that may constitute doing business". Tex.Rev.Civ.Stat.Ann. art. 2031b, § 4 (Vernon 1964) (amended 1979). Defendant West Shore was clearly doing business in Texas at the time of the sale of the Miss Ida Ann to the Plaintiff. Although Defendant West Shore maintained no office, no telephone nor advertised in Texas, the discovery conducted shows substantial contacts with this State and almost exclusively with the Southern District of Texas. According to the depositions, approximately ninety percent of all of the shrimp caught by West Shore was caught in the coastal waters off of Texas. All fuel for the shrimp boats was bought in this State. Approximately seventy-five percent of all maintenance and repairs to the shrimp boats took place at Port Isabel, Texas. Fifty to fifty-five percent of the total amount of shrimp caught were sold to a Texas processor in Brownsville. The other forty-five to fifty percent of this shrimp was shipped back by truck from Texas, presumably by a local carrier, to Tampa, Florida, the home port of West Shore. Most of the captains and crews of the Defendant's boats were residents of Texas. Other lesser contacts also affirmatively appear from the depositions. Finally, the contract for the sale of the Miss Ida Ann was apparently negotiated and the actual bargain was struck in Texas; however, the actual written contract was executed in Florida. While substantial Texas contacts appear in the record, all but one are unrelated to the sale of the vessel to the Plaintiff. Thus, while West Shore was clearly doing business in Texas, this cause of action does not directly arise out of that business. Arguably, therefore, the Texas long-arm would not be satisfied. A recent case has rejected this argument and held that under Article 2031b, a plaintiff's cause of action need not arise directly out of the defendant's contacts with the forum. *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355, 1359–60 (S.D.Tex. 1978); *see Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 749 (5th Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). This Court finds the reasoning of Judge Singleton in the *Navarro* case to be particularly persuasive and accordingly adopts it for purposes of this Opinion. The Defendant was doing substantial business unrelated to the subject matter of this lawsuit at the time of the sale of the Miss Ida Ann. This Court, therefore, holds that the assertion of jurisdiction in this case is firmly within the embrace of the Texas long-arm statute.

Having determined that the dictates of the Texas long-arm statute are satisfied, this Court still must decide whether the assertion of jurisdiction complies with due process. The due process clause of the fourteenth amendment imposes some restraints on a state's assertion of jurisdiction over a non-resident defendant. *See generally* U.S.Const. amend. XIV. As one commentator has noted, "[t]he island of Tobago still may not impose its will upon the whole world." M. Cardozo, *Reach of the Legislature and the Grasp of Jurisdiction*, 43 Cornell L.Q. 210, 213 (1957) (quoted in

*Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973)). The seminal case in determining whether a state's assertion of jurisdiction comports with due process is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The issue in *International Shoe* was whether the corporation was amenable to the judicial and taxing jurisdiction of the State of Washington. The United States Supreme Court held that due process is satisfied if the defendant has certain minimum contacts with the forum such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 101. The Court placed emphasis on whether it was reasonable for a state to require a defendant to litigate a particular action in the chosen forum. *Id.* at 319, 66 S.Ct. at 159, 90 L.Ed. at 103. Convenience and reasonableness to the defendant are not ends in themselves. The case of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), supports this proposition by holding that, no matter how convenient the forum might be, it is essential that in each case "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 251–53, 78 S.Ct. at 1240, 2 L.Ed.2d at 1296. Subsequent cases have held that very little purposeful activity is necessary to satisfy the minimum contacts requirement. *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1267 (5th Cir. 1978), *rev'd on other grounds sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Product Promotions, Inc. v. Cousteau*, 495 F.2d at 495. In the present case, Defendant West Shore has clearly conducted purposeful activity in Texas. By conducting such activity, it has invoked the benefits and protections of the Texas law. Furthermore, the Court is unable to conclude that it would be unfair to require Defendant West Shore to litigate in a Texas court. The only question remaining is whether the federal due process clause requires that the cause of action arise directly out of the Defendant's contacts with the forum. Recent cases have held that the due process clause imposes no such requirement. *Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 749–50 (5th Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355, 1360 (S.D.Tex.1978); *see National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 562, 97 S.Ct. 1386, 1393, 51 L.Ed.2d 631, 640 (1977). In the case at bar, this Court concludes that the continuous presence of the Defendant in Texas provides a sufficient nexus for due process to be satisfied. Since both Texas law and the federal due process clause are satisfied, it is ORDERED that Defendant West Shore's Motion to Dismiss for Lack of Personal Jurisdiction is hereby DENIED.